## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PETER G. COOK, THEA DUELL and ALEKSANDAR MILOSAVLJEVIC-COOK, individually and on behalf of MAYA'S MEALS, LLC, | : : : : | CIVIL ACTION NO.: 3:07-CV-0712 (JCH) |
| Plaintiffs, | : : : | |
| v. | : : | |
| MAYA TOIDZE, ALEXANDRE IVANKINE, TIM TOIDZE and ALEXANDRE AVROUTINE, | : : : | |
| Defendants. | : | APRIL 9, 2013 |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF COURT'S DIVERSITY JURISDICTION

Pursuant to the Order of the Court, plaintiffs submit this memorandum of law in support of the Court's diversity jurisdiction over this action.

## I.    INTRODUCTION

Based on the final judgment procedural posture of this case, the Court has several avenues to preserve its judgment. First, Maya's Meals was a "nominal " party that the Court did not need to consider for diversity jurisdiction purposes. Second, even if diversity jurisdiction was lacking this still does not render the final judgment "void" under Federal Rule of Civil Procedure 60(b). Third, the court can and should open the judgment to correct any diversity jurisdiction issue in order to uphold the final judgment. Fourth, resolving diversity jurisdiction is not futile because the court also had personal jurisdiction over the defendants when it entered the final judgment.

## II.    ARGUMENT

### A.    Maya's Meals, LLC was a nominal party at the time final judgment entered so the Court did not need to consider it for diversity jurisdiction purposes.

For purposes of determining whether requisite diversity of citizenship exists, the courts look to the citizenship of the real parties in interest and disregard the citizenship of nominal parties having no formal interest in the controversy. Stonybrook Tenants Assoc., Inc., et al. v. Alpert, et al., 194 F. Supp. 552, 555 (D. Conn 1961). See also, Stroek Corp. v. Air Transp. Ass'n of Am., 300 F.3d 1129, 1132 (9th Cir. 2002) (It is "an established rule that the presence of a "nominal" party need not destroy diversity jurisdiction."); Matchett v. Wold, 818 F.2d 574, 576 (7th Cir. 1987). "Determining whether a party is necessary or indispensable for diversity purposes is to be made on practical considerations." Stonybrook, at 557. The ultimate test of whether corporate parties are necessary or indispensable for diversity of citizenship is whether, in the absence of the corporate party, the Court can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable. Id. at 559.

A "nominal" party has been described as one: (i) "for whom there is no reasonable basis for predicting that it will be held liable"; (ii) against whom there is "no plausible cause of action against it"; (iii) "who has little...interest in the outcome of the litigation..."; or (iv) that is a liquidated corporation without assets...". Patrick, et al. v. Porter-Cable Corp., et al., 2010 U.S. Dist. Lexis 81173, *9-*10 (D. Conn. 2010);

The court's November 15, 2011 ruling ("Final Judgment") (Doc. No. 158, 159) on plaintiffs' motion for entry of default judgment ("Default Motion") (Doc No. 145) awarded declaratory/injunctive relief and compensatory damages that addressed independent harms to the individual plaintiffs. Maya's Meals was a nominal, unnecessary party with respect to all such

relief and damages entered by the Final Judgment. Any declaratory/injunctive or compensatory damages that were theoretically sought derivatively on behalf of Maya's Meals at the outset of this action, were resolved long-ago and were not at issue when the court entered the Final Judgment. All of the relief entered by the Court could most certainly have been entered without the presence of Maya's Meals as a party. This is especially true because Maya's Meals was, at the time of the Final Judgment, inactive and without assets, except for the intellectual property assigned to it by Ms. Toidze. (Peter Cook Affd., ¶¶ 5, 6, 7 attached at Exhibit A).

The compensatory damages awarded by the Court were expenses and loses incurred by the individual plaintiffs personally. None of those expenses were paid by nor owed to Maya's Meals. (Final Judgment, Doc. No.158 at pp. 1-2). (Peter Cook Affd. in support of default judgment dated 9/20/11, Doc No. 147).

The declaratory/injunctive relief that was sought and ordered addressed wrongs committed by the defendants against the individual plaintiffs (not against Maya's Meals). Specifically, the declarations the Court ordered remedied the defendants' fraudulent transfers designed to dilute the individual plaintiffs' voting shares, seize operational control of Maya's Meals, and then oust Mr. Cook from his management positions in the company. (Doc. No. 158, Section A(i)-(iii)). All of this harm was directly taken by the defendants against the individual plaintiffs.

The Final Judgment also granted injunctive relief that re-established the managerial positions within Maya's Meals and barred the defendants from taking any future actions to disenfranchise the individual plaintiffs. (Doc. No. 158, Section B(i) – (vii)). The only role Maya's Meals would ever have played in the above orders (had it been active when the Final

Judgment was entered) would have been the ministerial act of adjusting its corporate records consistent with the Final Judgment. Skaaning v. Sorensen, et al., 2009 U.S. Dist. Lexis 104715, *12 (D. Haw. 2009) (A court will ignore the citizenship of a nominal party who has no real interest in the action other than performing ministerial acts).

Although the Final Judgment entered declaratory and injunctive relief relating to the disclosure of certain recipes by Ms. Toidze to Maya's Meals, this too was to prevent further harm to the individual plaintiffs. Ms. Toidze's refusal to previously disclose such recipes was harming the individual plaintiffs because it was preventing Maya's Meals from moving forward with its joint venture. That corporate stagnation directly threatened the substantial monetary investments made by the individual plaintiffs in Maya's Meals. In other words, if Maya's Meals was unable to move forward with the joint venture and develop its food products because Ms. Toidze refused to surrender the recipes for such products, the individual plaintiffs' investments would be lost – which is precisely what happened.

Moreover, the recipe disclosure issue was actually resolved prior to the Final Judgment in connection with the June 29, 2007 stipulated agreement and order ("Stipulated Agreement") (Doc. No. 31). Paragraph 2 of the Stipulated Judgment provided that defendant Maya Toidze "on or before July 23, 2007 transfer and disclose all existing recipes/fillings estimated at twenty-seven (27) provided for in the Assignment and Agreement dated April 11, 2006...". (Doc. No 31, ¶ 2). Although a hearing and another court order was later necessary to compel Ms. Toidze to comply with the Stipulated Agreement (Doc. No. 65), she eventually and presumably disclosed all existing recipes to Mr. Cook on or about April 24, 2008, per the order of the Court, thereby resolving that issue. (Exhibit A, ¶ 8).

Finally, all of the issues alleged in the original complaint for which Maya's Meals at one time may have had an interest were moot and abandon when the Default Motion was filed and ordered. The issues relating to the joint venture, Maya's & Co. Foods, LLC, its member, Advance Food Company, Inc., the consulting company, Four Cooks, Ltd., and the manufacturer, Lone Star Bakery were all moot because when the Final Judgment entered Maya's Meals was defunct and all of the aforementioned relationship were terminated. (Exhibit A, ¶ 6). None of these issues were pursued in the Default Motion and likewise none were addressed in the Final Judgment.

Based on the foregoing, Maya's Meals was indeed a nominal, inactive party/entity at the time Final Judgment entered and was therefore not necessary for the judgment. Because it was not the real party in interest, the Court was not required to consider Maya's Meals for diversity jurisdiction purposes. Diversity jurisdiction otherwise existed between the individual plaintiffs and the defendants because, when the Final Judgment entered, the plaintiffs were citizens of Connecticut and Maine (Exhibit A, ¶¶ 3, 4) while the defendants have admitted they were citizens of Canada and/or Russia. (Defendants' affidavits in support of motion for reconsideration (Doc. No. 166, ¶ 1; Doc. No. 167, ¶ 1; Doc No. 168, ¶ 1).

**B.     Lack of diversity jurisdiction does not render the Final Judgment void.**

Even assuming the Court did not have diversity jurisdiction over the action, this does not mean the Final Judgment is void and subject to being vacated. Although raised by the Court and not the Defendants, the standard by which the Court has the power to open and vacate a Final Judgment is still pursuant to Federal Rule of Civil Procedure 60(b). "Federal Rule of Civil Procedure 55(c) provides that upon a showing of good cause, a court may set aside an entry of

default, however, where a judgment by default has been entered, Rule 60(b) applies."
Metropolitan Life Insurance Co. v. Cammon, 1990 U.S. Dist. Lexis 3852, *8 (N.D. Ill. 1990).
"Although Rule 60(b) relief is generally left to the sound discretion of the court, only a
compelling justification warrants the opening of a final judgment." Id. *10. "The Rule 60(b)
standard is applied even more stringently to default judgments than to other types of judgments."
Id. Relief from judgment under Rule 60(b) "is an extraordinary remedy and is granted only in
exceptional circumstances." Id.

The only basis under which the court or defendants (had they actually asserted such a
position) can potentially vacate the Final Judgment is to argue it is "void" under Rule 60(b)4.
None of the other enumerated grounds in Rule 60(b) have any application to the issue of
diversity jurisdiction in this action.  Under Rule 60(b), a

> void judgment is to be distinguished from a erroneous one, in that the latter is subject
> only to direct attack. A void judgment is one which, from its inception, was a complete
> nullity and without legal effect. In the interests of finality, the concept of void judgments
> is narrowly construed. While absence of subject matter jurisdiction may make a judgment
> void, such total want of jurisdiction must be distinguished from an error in the exercise of
> jurisdiction. A court has the power to determine its own jurisdiction, and an error in that
> in that determination will not render the judgment void. Only the rare instance of a clear
> usurpation of power will a judgment be rendered void.

Honneus v. Donovan, 93 F.R.D. 433, 437 (D. Mass. 1982; affd. 691 F. 2d 1 (1st Cir. 1982). See
also, Steiner v. ATOCHEM, S.A., 70 Fed Appx. 599, 600 (2d Cir. 2003), citing Honneus.

In Honneus, the complaint alleged that diversity jurisdiction existed between the plaintiff
and the defendant enabling the court to find that, "on its face, diversity, and hence subject matter
jurisdiction existed." Id.  The court reasoned that in entering the default judgment against the
defendant the court accepted the facts regarding jurisdiction as alleged. Id.  Even though the
Court's exercise of diversity jurisdiction was incorrect, the Honneus court held that such an

erroneous finding did not constitute a usurpation of power. Id. *12. The Court also noted that the Rule 60(b) procedural posture of the case was distinguishable from cases where the lack of diversity jurisdiction is raised before a final judgment or while on appeal. Id. * 9.[1]; Steiner, 70 Fed Appx. 599 ("We have held in *Nemaizer v. Baker* that a Rule 60(b)4 motion will not be granted where the district court had a reasonable basis for exercising jurisdiction, although the court may have erred in fact as to the existence of that jurisdiction. Naimizer, 793 F.2d 58, 65 (2nd Cir. 1986).

In Estate of Malone, Jr., et al. v. GE Credit Corp., et al., 1992 U.S. Dist Lexis 22517 (S.D. Miss. 1992)[2], the court was also presented with a motion to vacate a final judgment under Rule 60(b) based on the Court's alleged lack of diversity jurisdiction. Id. * 12. There the court found that even though a lack of diversity jurisdiction had been raised in a motion to remand, the court impliedly overruled the motion and entertained subject matter jurisdiction by entering the default judgment. Id. 10. "[E]very court in rendering a judgment, tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter. Id. "Further it is clear that federal court judgments are binding notwithstanding the simple lack of subject matter jurisdiction whether the jurisdictional question was even actually litigated or not." Id. In Estate of Malone, the court ruled that the error in the exercise of jurisdiction did not render the judgment "void", and the defendant's failure to attack the judgment on jurisdictional grounds on appeal, "sealed its fate." Id. 12.

---

[1] The defendant in Honneus also argued that plaintiff had perpetrated a fraud on the court by improperly alleging diversity jurisdiction in the complaint. Here, this is not possible because the defendants misrepresented to the Court that diversity jurisdiction existed. (Doc. No. 1).

[2] Unpublished cases are attached at Exhibit B.

In <u>Metropolitan Life Insurance Company v. Estate of Cammon</u>, 929 F.2d 1220 (7th Cir.

1991), the court also upheld the trial court's decision denying a rule 60(b) motion to vacate a

final judgment based, in part, on an alleged lack of diversity jurisdiction over the parties when

the default judgment was entered. On appeal, the court stated in conclusion:

> For a long time courts were reluctant to enter default judgments, and appellate courts
> were reluctant to sustain those that were entered. Courts emphasized that litigants are
> entitled to decisions on the merits, and that default is a harsh sanction. Those times are
> gone....And district judges have become more aggressive in using their ultimate weapon
> to promote the efficient conduct of litigation. More power to them. [Citation omitted]
> Drawn out litigation frustrates rather than promotes justice. Judges stretched thin by the
> flux of suits must do more with fewer hours per case. That means more reliance on the
> time tables and other rules that apply across the board, and less custom tailoring.
> Cammon ignored these time tables, ignored them even after the judge announced a last
> chance two week extension. Now he pays the price.

Here, the defendants expressly represented in their May 2, 2007 notice of removal that

the court had diversity jurisdiction over this matter and articulated the basis for such position.

(Doc No. 1). On its face, the court therefore had diversity jurisdiction and the judgment, by

definition, is not void. It is also important that the diversity jurisdiction representations were

made by defendants' counsel and not the defendants in their pro-se capacity. Thus, the court had

even more reason to trust such representations were accurate as they were made by competent

counsel. The parties also appeared before the Court, conducted a one day hearing, entered into

the Stipulated Judgment which incorporated the court's jurisdiction, and then engaged in

additional litigation and hearings, all without anyone ever raising the issue of the court's

diversity jurisdiction.    Based on all of this activity, the court clearly assumed, whether

erroneously or not, that the defendants' representations as to diversity jurisdiction were accurate.

The parties' actions and the case activity obviously led the court to believe that diversity

jurisdiction existed. Even now, over five years later, the defendant still did not realize the issue

8

when filing their papers to open the Final Judgment – the issue was raised by the court *sua sponte*.

Finally, even if the court erroneously believed that Maya's Meals was a "nominal" party (because the court was aware that the company was obviously inactive) (Amended/Substituted Complaint, Doc. No. 108, ¶¶ 86, 87) (thereby not needing to consider its citizenship), this too would provide a firm basis for the court to have reasonably believed that diversity jurisdiction existed, thereby causing the Final Judgment to not be void under Rule 60(b)4.

Based on the foregoing, the court had good reason to rely on the jurisdictional representations by defendants' counsel, the considerable litigation actions of the parties, and defendants failure to ever raise the issue before the Final Judgment or on appeal. Accordingly, the court's exercise of jurisdiction was reasonable (even if actually erroneous), the Final Judgment is not void and no basis under Rule 60(b) exists to open or vacate the Final Judgment for lack of diversity jurisdiction.

### C. If necessary, the Court can and should open the Final Judgment to correct any diversity jurisdiction issue.

Defendants reliance on <u>Handelsman, et al. v. Bedford Village Assoc. Limited Partnership, et al.</u>, 213 F.3d 48 (2d Cir. 2000) is misplaced as the decision actually supports plaintiffs' position. In <u>Handlesman</u>, the Second Circuit vacated and remanded the District Court's post-judgment order attempting to salvage diversity jurisdiction by dismissing certain parties. <u>Id.</u> 50. As a matter of law, the court stated that under proper circumstances a trial or appellate court may exercise its power to dismiss a dispensable nondiverse party from a suit under Rule 21 of the Federal Rules in order to salvage jurisdiction. Id. 53. Along these lines, the United States Supreme Court in <u>Newman-Green, Inc. v. Alfonzo-Larrin</u>, 490 U.S. 826, 832

(1989), noted that "it is well-settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, **even after judgment has been rendered** and that requiring dismissal after years of litigation would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention." Id. 836; (emphasis added).

While the Handelsman court found that the trial court order could not be upheld for several reasons, none of those reasons are present in this case. First, there is no standing issue relating to any specific performance request in this case. Second, Maya's Meals is a nominal, dispensable party, as explained above, because all of the relief sought is for harm to the individual plaintiffs and not Maya's Meals. Even assuming Maya's Meals was not a nominal party, the court can and should still remand to the state court or dismiss Maya's Meals claims.[3] This would leave in the Final Judgment whatever declaratory/injunctive relief was directly brought by the individual plaintiffs, along with their compensatory damages award. Finally, there is no prejudice to any other member of Maya's Meals because the Final Judgment has no effect whatsoever on their interests in the then and still inactive company.

### D.   Resolving diversity jurisdiction is not futile because the court also had personal jurisdiction over the defendants when it entered the Final Judgment

Resolving the issue of subject matter jurisdiction is not futile because the court also had personal jurisdiction over the defendants when it entered the Final Judgment. It is relevant to

---

[3] Remanding or dismissing Maya's Meals claims from the action will also render moot the purported lack of jurisdiction issues raised by the defendants concerning the company not being registered to do business in Connecticut. In any event, plaintiffs have cited case law showing that lack of registration does not actually implicate the court's subject matter jurisdiction.

note here that due process did not require that the Amended/Substituted Complaint be served in accordance with Rule 4 of the Federal Rules of Civil Procedure.  Rather, for a default judgment to withstand a collateral attack under Rule 60(b), service "need not comply with Rule 4 but only with constitutionally minimal due process requirements." <u>Broadcast Music, Inc. v. M.T.S. Enterprises, Inc., et al.</u>, 811 F.2d 278, 281 (5th Cir. 1987).  Due process can be satisfied in many ways, including voluntary appearance, appearance through apparent authority, actual knowledge and waiver.  <u>Id.</u>

In <u>Broadcast Music</u>, the court upheld the trial court's denial of a Rule 60(b)4 motion to open a final judgment based on alleged insufficiency of process where the defendants were found to have appeared and waived any objection to personal jurisdiction or service of process. <u>Id.</u> 282, HN 3.  The court stated that objections to personal jurisdiction or to service of process must be raised in a timely fashion. <u>Id.</u> 281.  An appearance in an action may serve to waive a timely objection by implication from a defendant "seeking, taking, or agreeing to some step or proceeding in the cause beneficial to himself or detrimental to plaintiff other than one contesting the jurisdiction or by reason of some act or proceeding recognizing the case as in court." <u>Id.</u> HN 2.

> The Federal Rules do not in any way suggest that a defendant may halfway appear in a case, giving plaintiff and the court the impression that he has been served, and at the appropriate time, pull failure of service out of a hat like a rabbit in order to escape default judgment. To countenance this train of events would elevate formality over substance and would lead plaintiffs to waste time, money, and judicial resources pursuing a cause of action. <u>Id.</u>
> ...
> A dual purpose animates the Federal Rules of Civil Procedure as they pertain to service of process. No person need defend an action nor suffer judgment against him unless he has been served with process and properly brought before the court.  But, at the same time, notions of efficiency conduce to a reasonable, non-mechanistic interpretation of

11

whether service has been effected in a given case, as a result of which improper service or lack of personal jurisdiction can be waived if not timely asserted. Id. *8

In Adidas Sportschuhfabriken Adi Dassler Stiftung & Co., et al. v. Cheung, et al., 1990 U.S. Dist. Lexis 3953 (S.D.N.Y. 1990), the court also denied a Rule 60(6) motion where the defendant willfully ignored the action and allowed the default judgment to enter. Id. * 6. "A default is willful where a defendant simply ignores a complaint and does not formally respond. Id.; citing Marizillano v. Heckler, 728 F.2d 151, 728 (2nd Cir. 1984). The Court found that defendant (Cheung) made the "calculated choice not to appear in the action" even though he and the co-defendant admitted to receiving notice of the action. Id. *5.

The present case is more compelling than the above cases because those cases were based on challenges to the sufficiency of service regarding the original complaint. Here, there is no dispute that the defendants were properly served with the original complaint in May 2007. Following such service, they appeared, removed this action to federal court and then participated through counsel in two hearings, a court annexed mediation and entered into the Stipulated Judgment. There is obviously no question but that the defendants were aware of this lawsuit.

The subsequent pleading history then shows that the defendants through appearance, apparent authority and actual knowledge waived any objection to service of process regarding the Amended/Substituted complaint. On October 8, 2009, defendants then counsel, Thomas F. Maxwell, Jr. and Tristan Scott Cowperthwait moved to withdraw their appearances in this action. (Doc. No. 77). By notice dated October 22, 2009 (the "October 2009 Notice"), the court gave the defendants until November 5, 2009 to file and serve on their counsel, any objections to the motion to withdraw. (Doc. No. 82). The October 2009 Notice specifically advised defendants that, in the event the motion to withdraw was granted, they must file a pro se appearance or

retain new counsel to file an appearance on their behalf within three (3) weeks after the Court granted the motion to withdraw. Id. The October 2009 Notice further provided that "[f]ailure to file a pro se appearance or to arrange for new counsel to appear in that time **will result in an entry of default against the defendants for failure to appear**." (emphasis added) Id. On November 16, 2009, the Court granted the motion to withdraw and again reminded the defendants that they "may file pro se appearances, or cause substitute counsel to appear." (Doc. No. 86).

Plaintiffs then moved the Court on April 8, 2010 to open the Stipulated Judgment to proceed on their original claims as well as the related claims arising from the defendants' breach of the Stipulated Judgment. (Doc. No. 90). On June 22, 2010, the court granted plaintiffs' motion. (Doc. No. 91). On August 13, 2010, plaintiffs moved to amend their complaint (Doc. No. 93). On September 7, 2010, the Court granted plaintiffs' motion to amend (Docket Entry No. 94), and on September 8, 2010, plaintiffs filed and served their amended complaint ("Amended Complaint") (Docket Entry No. 95). Thereafter, on September 27, 2010, plaintiffs moved for entry of default against the defendants for their failure to appear, plead or otherwise defend the action. ("September Default Motion") (Doc. No. 96). At that time, defendants appearances either pro se or through counsel were outstanding for over 10 months and there had been no defense of the action whatsoever by defendants since their prior counsel withdrew from the action.

Critical to the purported service of process issue is that on or about October 8, 2010, defendants filed an appearance in the action through defendant Maya Toidze. (See State Court appearance attached hereto as Exhibit C). In addition, Ms. Toidze also filed, on behalf of **all**

13

defendants, a reply <u>and</u> an amended reply, both dated October 8 , 2010 to the September Default Motion. (See reply and amended reply attached hereto as <u>Exhibits D and E</u>). There can be no doubt therefore that Defendants had actual knowledge of the Amended Complaint[4] and September Default Motion because they discussed and objected to both in their reply and amended reply. (Exhibit D ¶¶ 8-11; Exhibit E ¶¶ 8-11).

On October 12, 2010, the Court entered orders returning the above improper submissions by the Defendants. (Docket Entry Nos. 101 -104). Despite the Court's clear notices in the orders returning the submissions, the defendants ignored them. The affidavits of the defendants filed in support of their Rule 60(b) motion make clear that the defendants willfully ignored this action and made the calculated decision to not appear or plead. They did this despite their **actual knowledge** of the action, the court's October and November 2009 notices advising them to appear or suffer a default, the Amended Complaint, the September Default Motion, the return of their improper filings and the Substituted Complaint.

Importantly, the declarations in support of the motion for reconsideration filed by each of the defendants **do not** deny that they were unaware of the Amended Complaint, the September Default Motion or Substituted Complaint. What the declarations assert is that they were not "served" with such papers under the Hague Convention. The defendants declarations in essence further admit: "I was advised by my Russian counsel, due to my dual citizenship, I was entitled to be served under the above 1965 Hague Convention Service when I actually resided in

---

[4] The September Amended Complaint is identical to the Substituted Complaint, so defendants actual receipt and knowledge of that complaint also satisfies minimum due process concerns. Nevertheless, the Amended Complaint and the September Default Motion are referred to here to also show how defendants willfully ignored this action.

Moscow." (Declarations, Doc. 166, ¶¶ 12,13,33; Doc. No. 167, ¶¶ 11-12; Doc. No. 168, ¶ 18). The declarations make clear that the defendants willfully chose to ignore this action based on their service of process beliefs.

The defendants' motion for reconsideration also admits that "from late 2009, the three majority members, two residing in Russia permanently and one residing in Russia most of the time, **discontinued participating in this litigation in Connecticut**". (See Motion at p. 6). The motion also states that "Dr. Toidze, the inventor, resides and works in Russia, outside of jurisdiction in the State of Connecticut, and she was not lawfully served any filings in this matter **after November 16, 2010**."

While these statement help to prove that the defendants willfully ignored this action, the statement that the defendants discontinued participation in this action in late 2009 is simply false. The defendants filed papers in October 2010 after receiving the amended complaint and the motion for default. Defendants lied about their supposed lack of participation in this action because they forgot about those returned papers and were hoping to insulate themselves from alleged knowledge of this action being reopened in April 2010, the Amended Complaint, the September Default Motion and the Substituted Complaint. Defendants statements are entirely inconsistent because they are not being truthful or candid with this court.[5]

---

[5] The typed date of **July 10, 2010** on the defendants faulty state court appearance is interesting because it proves they were actually aware of the case being reopened before the Amended Complaint was served. The appearance was surely in response to the court's June 22, 2010 order granting the plaintiffs motion to reopen the case. That defendants receipt of that order from the court entirely undermines their representations that they were in Russia at that time and unaware of these proceedings. (Doc. No. 164, p. 6). Despite actual knowledge that the case was reopened, the defendants withheld their July 2010 dated appearance until they later received the September 2010 Default Motion. It seems clear that after the court returned their improperly filed papers in October 2010, the defendants then consulted their Russian attorney

Defendants calculatingly and willfully disregarded multiple court orders, notices and pleadings, because they incorrectly believed they were entitled to technical service under the Hague Convention. The case law is clear that based on the procedural posture of this case, defendants were not entitled to formal service under the Hague Convention or Rule 4 of the Federal Rules of Civil Procedure. All that defendants were entitled to was fair notice of the Amended/Substituted Complaint. The evidence and case law cited in this memorandum, as well as in plaintiffs' prior submissions categorically show that due process was more than satisfied and that the defendants are playing games with the facts in an effort to mislead this court.

Even if such process was not satisfied, defendants waived their right to contest service of process regarding the Amended/Substituted Complaint when they all attempted to appear through Ms. Toidze and object to the Amended Complaint and September Default Motion. By filing such documents and not raising any issues regarding their proper service, the defendants waived their right to now "pull a rabbit out of a hat" and collaterally cry foul after the Final Judgment had entered. Likewise, defendants can not fail to advise the court and the plaintiffs of their whereabouts in the world and then pop in and out of this action whenever it suited them. It is also entirely disingenuous for the defendants to claim that Ms. Toidze did not inform her son and her husband of her attempted filings objecting to the Amended Complaint and the September Default Motion, especially where they claim to have supposedly learned of the pending default motion from their friend and former co-defendant, Mr. Avroutine. The Court need not believe

---

and made the calculated decision to ignore this action, despite receiving notice that it had been reopened and that the complaint had been amended.

such far fetched representations, especially where defendants refuse to appear and be cross-examined on such matters.

There is ample grounds for the Court to exercise subject matter and personal jurisdiction in this action. To not do so would be a gross miscarriage of justice as the plaintiffs have done all they could to move this matter forward despite the defendants' blatant obstacles and dilatory tactics.

## CONCLUSION

For the reasons set forth above, and in their prior submissions, plaintiffs assert that the court had subject matter and personal jurisdiction over this action at the time the Final Judgment was entered.

PLAINTIFFS,
PETER G. COOK, THEA DUELL and
ALEKSANDAR MILOSAVLJEVIC-COOK,
Individually and on behalf of MAYA'S
MEALS, LLC

By:    /s/Richard P. Colbert
          Richard P. Colbert (ct 08721)
          Day Pitney LLP
          One Audubon Street
          New Haven, Connecticut 06511
          Tel: (203) 977-7375
          Email: rpcolbert@daypitney.com

## CERTIFICATION OF SERVICE

I hereby certify that on April 9, 2013, the foregoing memorandum of law in support of the court's diversity jurisdiction was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to any party who is unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

/s/ Richard P. Colbert
Richard P. Colbert

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PETER G. COOK, THEA DUELL and | : | CIVIL ACTION NO. |
| ALEKSANDAR MILOSAVLJEVIC-COOK | : | |
| individually and on behalf of | : | |
| MAYA'S MEALS, LLC, | : | |
| | : | |
| Plaintiffs, | : | 3:07-CV-00712 (JCH) |
| | : | |
| VS. | : | |
| | : | |
| MAYA TOIDZE, ALEXANDRE | : | |
| IVANKINE, TIM TOIDZE and | : | |
| ALEXANDRE AVROUTINE, | : | |
| | : | |
| Defendants. | : | APRIL 9, 2013 |

### AFFIDAVIT OF PETER G. COOK

| STATE OF CONNECTICUT | : | |
|---|---|---|
| | : | ss. Greenwich |
| COUNTY OF FAIRFIELD | : | |

I, Peter G. Cook, having been duly sworn, depose and state as follows:

1.    I am over the age of 18 and believe in the obligation of an oath.

2.    I make this affidavit in support of Plaintiffs' memorandum of law in support of

the court's diversity jurisdiction over this action

3.    I and my wife and co-plaintiff Thea Duell are citizens of Connecticut, residing at

79 Pecksland Road, Greenwich, Connecticut.

4.    My son and co-plaintiff Aleksandar Milosavljevic-Cook is a citizen of Maine,

residing at 59 Hardy Road, Falmouth, Maine.

5.    As a result of the internal strife within Maya's Meals LLC and Maya Toidze's

lack of cooperation with Maya & Co. Foods, LLC, the joint venture with Advance Foods

Company, Inc., neither Maya's Meals  nor the joint venture ever did any actual business anywhere. The company merely prepared to do business through the joint venture but ultimately never commercially sold a single unit of product anywhere, including the state of Connecticut.

6.       When the court entered final judgment in this action on November 15, 2010, Maya's Meals had, for some time, been an inactive company.  Other than the intellectual property assigned and partially transferred to it, pursuant to the Assignment and Agreement of April 11, 2006, Maya's Meals had no assets.  In addition, all of its relationships with Maya's & Co. Foods, LLC, Advance Foods Company, Inc., the Maya Toidze consulting company, Four Cooks, Ltd., and the manufacturer, Lone Star Bakery were terminated or had lapsed well-before the final judgment was entered.

7.       Maya's Meals has since done no business, it still has no assets other than the intellectual property and it has not had a proper formal meeting since this lawsuit began in May of 2007.

8.       Although a hearing and another court order were necessary to compel Maya. Toidze to comply with the June 29, 2007 Stipulated Agreement and Order, upon information and belief she eventually and presumably disclosed all existing recipes to me, as a managing member of Maya's Meals and of Maya's & Co. Foods, LLC, and Advance Foods Company, Inc., as a managing member of Maya's & Co. Foods, LLC, on or about April 24, 2008 in accordance with the Court's order.  Furthermore, and to the best of my knowledge, neither I, Maya's & Co. Foods, LLC, Advance Foods Company, Inc. nor Lone Star Bakery have ever done anything commercially with those recipes.

-2-

_____
Peter G. Cook

County of Fairfield
State of Connecticut

Sworn to before me this
9th day of April, 2013

_____
Notary Public

**MICHAEL J. McINTOSH**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES APR. 30, 2015

-3-

72015586.1 700044-000000

# EXHIBIT B

| Search | Get a Document | Shepard's® | More | | Alerts |
|---|---|---|---|---|---|

FOCUS™ Terms 　　　　　　　　　　　[🔍]　Advanced...  **Get a Document**　　　[🔍]　View Tutorial

Service: **Get by LEXSEE®**
Citation: **1990 U.S. DIST LEXIS 3953**

*1990 U.S. Dist. LEXIS 3953, ***

ADIDAS SPORTSCHUHFABRIKEN ADI DASSLER STIFTUNG & CO., K.G., et al., Plaintiffs, v. STEVE CHEUNG, FRONTIER WATCH, INC., TOMMY WONG, WTC ENTERPRISES, INC., STEVE WONG AND PANARIA INTERNATIONAL INC., Defendants

No. 87 Civ. 8989 (JFK)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1990 U.S. Dist. LEXIS 3953

April 9, 1990, Decided; April 10, 1990, Filed

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant businessmen sought relief from default judgments entered against them, pursuant to Fed. R. Civ. P. 55(c), 60(b). Plaintiff trademark holders sought sanctions pursuant to Fed. R. Civ. P. 11.

**OVERVIEW:** The trademark holders sued to recover attorney's fees and costs attributable to the various businessmen in their actions for trademark infringement and unfair competition. The businessmen failed to respond to the summons and complaint. The businessmen then sought relief, pursuant to Fed. R. Civ. P. 55(c) and 60(b), from default judgments entered against them. Certain of the businessmen also sought, pursuant to Fed. R. Civ. P. 12(b)(5), dismissal of the summons and complaint for insufficiency of service of process. The court denied the motions to vacate the default judgments, and the motions to dismiss the summons and complaint for insufficiency of service of process. The finding of the businessmen's willfulness obviated the need to continue the inquiry with respect to the existence of a meritorious defense and prejudice to the trademark holders. None of the businessmen disputed that they had actual notice of the suit. The trademark holders' motion for sanctions was denied. Mere failure to prevail on the merits did not require the imposition of sanctions. Fed. R. Civ. P. 11 was not intended to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law.

**OUTCOME:** The court denied the businessmen relief from default judgments entered against them and the trademark holders' motions for sanctions were denied.

**CORE TERMS:** default judgments, vacate, default, summons, service of process, notice, actual notice, willful, imposition of sanctions, meritorious defense, insufficiency, signer, waived, attorneys' fees, willfulness, deposition, reasons stated, reasonable belief, personal jurisdiction, requisite, frivolous, infringing, verified, Federal Rules, process server, impose

Get a Document - by Citation - 1990 U.S. Dist. LEXIS 3953    Page 2 of 9

Case 3:01-cv-00722-JCH   Document 201   Filed 04/09/13   Page 25 of 94

sanctions, competent attorney, imposing sanctions, managing agent, calculated

## LEXISNEXIS® HEADNOTES                                                ⊴ **Hide**

Civil Procedure > Pretrial Judgments > Default > Default Judgments 🔚

Civil Procedure > Pretrial Judgments > Default > Relief From Default 🔚

Civil Procedure > Judgments > Relief From Judgment > Excusable Neglect & Mistakes >
   General Overview 🔚

*HN1* ⊥ Defaults, often referred to as the weapon of last resort, are disfavored, especially
   when the case presents issues of fact. A court should resolve all doubts in favor of
   determination on the merits. Accordingly, courts should liberally grant motions to
   vacate default judgments so that a trial on the merits may be had and justice be
   done. Fed. R. Civ. P. 55(c) states that a court may set aside an entry of default for
   good cause shown. A district judge has discretion to determine whether such good
   cause has been shown. Fed. R. Civ. P. 60(b)(1) authorizes a district court to vacate
   a default judgment entered against a defendant if the default was the result of
   mistake, surprise, inadvertence or excusable neglect. To establish that it is entitled
   to relief on any of these grounds, a defendant must establish that its default was
   not willful, that it has a meritorious defense and that vacating the default will not
   result in unfair prejudice to plaintiff.  More Like This Headnote

Civil Procedure > Pretrial Judgments > Default > Default Judgments 🔚

Civil Procedure > Pretrial Judgments > Default > Relief From Default 🔚

Civil Procedure > Judgments > Relief From Judgment > General Overview 🔚

*HN2* ⊥ In determining a motion for relief from a default judgment, a finding of willfulness
   obviates the need to continue the inquiry with respect to the existence of a
   meritorious defense and prejudice to plaintiffs.  More Like This Headnote |
   *Sheparidize:* Restrict By Headnote

Civil Procedure > Sanctions > Baseless Filings > General Overview 🔚

*HN3* ⊥ Fed. R. Civ. P. 11 states, in relevant part: The signature of an attorney or party
   constitutes a certificate by the signer that the signer has read the pleadings,
   motion, or other paper and that it is not interposed for any improper purpose, such
   as to harass or to cause unnecessary delay or needless increase in the cost of
   litigation. If a pleading, motion, or other paper is signed in violation of this rule, the
   court, upon motion or upon its own initiative, shall impose upon the person who
   signed it an appropriate sanction, which may include an order to pay to the other
   party or parties the amount of reasonable expenses incurred because of the filing of
   the pleading, motion, or other paper, including a reasonable attorney's
   fee.  More Like This Headnote

Civil Procedure > Sanctions > Baseless Filings > General Overview 🔚

*HN4* ⊥ When it is obvious from the inadequacies of a proposed motion that the attorney
   who assembled the motion engaged in little or no preliminary factual or legal
   investigation before filing the motion, Fed. R. Civ. P. 11 directs the court to impose
   reasonable costs and attorney's fees against the offending party. When a district
   court finds that an attorney or a party has violated Rule 11, the imposition of

Get a Document by Citation 1990 U.S. Dist. LEXIS 3953    Filed 04/09/13   Page 26 of 94  Page 3 of 9

Case 3:01-cv-00722-JCH  Document 201

sanctions is mandatory. Sanctions are to be imposed when a competent attorney could not form the requisite reasonable belief as to the validity of what is asserted in the motion. However, in imposing Rule 11 sanctions, the court is to avoid hindsight and resolve all doubts in favor of the signer. Rule 11 is violated only when it is patently clear that a claim has absolutely no chance of success. More Like This Headnote

Business & Corporate Law > Agency Relationships > Agents Distinguished > General Overview 🖘

Business & Corporate Law > Corporations > Directors & Officers > General Overview 🖘

Civil Procedure > Pleading & Practice > Service of Process > General Overview 🖘

*HN5* The Federal Rules provide that a summons and complaint may be served on a corporation pursuant to the law of the state in which the district court is located. Fed. R. Civ. P. 4(c)(2)(C)(i); New York allows service based on delivery of the summons and complaint to an officer, director, managing or general agent, or cashier or assistant cashier or to any other authorized by appointment or by law to receive service. N.Y. C.P.L.R. 311. It is not unusual for a corporation's employees to accept service of process on behalf of the corporation's officers. When this occurs, service may be valid, even if the employee were expressly unauthorized by the corporation to accept service, because a process server cannot be expected to know the corporation's internal practices. If service is made in a manner which, objectively viewed, is calculated to give the corporation fair notice, the service should be sustained. New York courts will find service valid where the process server has gone to the corporation's officers, made proper inquiry of the defendant's own employees, and delivered the summons according to their directions. More Like This Headnote | *Shepardize*: Restrict By Headnote

Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Affirmative Defenses > General Overview 🖘

Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview 🖘

*HN6* Lack of personal jurisdiction is a privileged defense that can be waived by failure to assert it reasonably, by formal submission in a cause, or by submission through conduct. Although Fed. R. Civ. P. 12(h)(1) does not provide a time limit for contesting service of process, other than the 20-day period for filing a responsive pleading, the defense must be pursued in a reasonably timely manner or it is waived. More Like This Headnote

**COUNSEL: [*1]** For Plaintiff: Milton Springut, Esq., LIEBERMAN, RUDOLPH & NOWAK, New York, New York, Of Counsel: James L. Bikoff, Esq., Mark N. Mutterperl, Esq., Dale R. Harburg, Esq., Jeffrey M. Sandman, Esq., BAKER & HOSTETLER, Washington, D.C.

For Defendant: Defendants Steve Cheung, Frontier Watch, Inc., Steve Wong, Tommy Wong and WTC Enterprises, Dudley Gaffin, Esq., GAFFIN & MAYO, New York, New York, Defendant: Panaria International, Inc., Alfonso F. Ramos, Esq., New York, New York.

**OPINION BY:** KEENAN

**OPINION**

*MEMORANDUM OPINION and ORDER*

Get a Document - by Citation - 1990 U.S. Dist. LEXIS 3953    Page 4 of 9

Case 3:07-cv-00712-JCH    Document 201    Filed 04/09/13    Page 27 of 94

JOHN F. KEENAN, UNITED STATES DISTRICT JUDGE

Defendants, several individual businessmen and a corporation, move pursuant to Fed. R. Civ. P. 55(c) and 60(b) for relief from default judgments that were entered against them. Defendants Steve Wong, Tommy Wong and WTC also move pursuant to Fed. R. Civ. P. 12(b)(5) for dismissal of the summons and complaint for insufficiency of service of process. For the reasons stated below, the Court denies defendants' applications. Plaintiffs move pursuant to Fed. R. Civ. P. 11 for the imposition of sanctions against Steve Cheung, Frontier Watch, Inc. and Panaria International, Inc. For the reasons stated below, the Court denies plaintiffs' **[\*2]** motion.

*Facts*

This is an action to recover $ 60,838.33 in attorneys' fees and costs attributable to the various defendants. On December 17, 1987, plaintiffs adidas Sportshuhfabriken Adi Dassler Stiftung & Co., K.G., adidas USA, Inc., The Coca-Cola Company, Major League Baseball Properties, Inc., and the 26 Major League Baseball Clubs ("plaintiffs") filed a Verified Complaint for Federal Trademark Infringement and Federal and State Unfair Competition in the instant action against defendants Steve Cheung, Frontier Watch, Inc., Tommy Wong, WTC Enterprises, Inc., Steve Wong, and Panaria International, Inc. Declarations of Service of Robin Lamont, Fred Kretsch, and Soeko Prasetyo have been filed with the Court stating defendants were served with a copy of the summons and verified complaint on December 18, 1987. Defendants did not respond to the verified complaint and the Clerk of the Court entered defaults against defendants on September 15, 1988, which were amended on March 30, 1989 because the original default judgments misidentified Frontier Watch as "Frontier Watch Company" instead of its correct name, "Frontier Watch, Inc."

*Discussion*

*HN1* Defaults, often referred to as **[\*3]** "the weapon of last resort", are disfavored, especially when the case presents issues of fact. In Re Martin-Trigona, 763 F.2d 503 (2d Cir. 1985). A court should resolve all doubts in favor of determination on the merits. Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). Accordingly, courts should liberally grant motions to vacate default judgments so that a trial on the merits may be had and justice be done. Triad Energy Corp. v. McNell, 110 F.R.D 382 (S.D.N.Y. 1986).

Fed. R. Civ. P. 55(c) states that a court may set aside an entry of default for good cause shown. A district judge has discretion to determine whether such good cause has been shown. Brock v. Union Racquetball and Health Clubs,Inc., 786 F.2d 61, 64 (2d Cir. 1986); Traguth v. Zuck, 710 F.2d 90, 94 (2d Cir. 1983). Fed. R. Civ. P. 60(b)(1) authorizes a district court to vacate a default judgment entered against a defendant if the default was the result of mistake, surprise, inadvertence or excusable neglect. See United States v. Erdoss, 440 F.2d 1221, 1223 (2d Cir. 1971), cert. denied, 404 U.S. 849 (1972). To establish that it is entitled to relief on any of these grounds, a defendant must establish **[\*4]** that its default was not willful, that it has a meritorious defense and that vacating the default will not result in unfair prejudice to plaintiff. Brock, 786 F.2d at 64; Marziliano v. Heckler, 728 F.2d 151 (2d Cir. 1984). Traguth, 710 F.2d at 94; Standard Enterprises, Inc., v. Bag-It, Inc., 115 F.R.D. 38, 39 (S.D.N.Y. 1987).

Applying the established criteria, the Court now turns to each group of defendants and evaluates their default.

*I. Defendants Steve Cheung and Frontier Watch, Inc.*

*1. Motion to Vacate Default Judgment.*

*A. Willfulness of Defendants' Conduct*

Plaintiffs assert that defendants purposefully chose not to appear in the action. To bolster this contention, they assert that 1) Steve Cheung and Frontier Watch received proper notice, 2) Steve Cheung and Frontier Watch appeared at a deposition, and 3) Steve Cheung and Frontier Watch were contacted by plaintiffs' counsel in attempts for an out of court settlement of the award of attorneys' fees and costs provided for in the default judgment. A default is willful where a defendant simply ignores a complaint and does not formally respond. Mariziliano, 728 F.d at 156. Steve Cheung **[*5]** made the calculated choice not to appear in the action even though he admits that he and Frontier Watch received notice of the action. Cheung Aff. para. 8. In March 1988, Steve Cheung, president of Frontier Watch, appeared at a deposition in this matter on behalf of himself and Frontier Watch. Moreover, in an effort to settle the case, the defendants made an offer of $ 3200 to the plaintiffs in hopes of paying less than the full amount of attorneys' fees and costs as ordered by the Court in the default judgment. Steve Cheung states that English is not his native language and does not always understand what is being asked of him. Cheung Reply Aff. para. 2. He further states that, "[he] felt that if [he] agreed not to sell any more merchandise with plaintiffs' companies' name on it, plaintiffs would leave [him] alone." Cheung Reply Aff. para. 11. Although Steve Cheung was not represented by counsel at the stages of this action prior to the default, it is clear from the above that he recognized plaintiffs were challenging his conduct in a lawsuit. Given this factual background, the Court does not hesitate to conclude that Cheung's and Frontier's default was willful.

*HN2* ⚓ A finding of willfulness **[*6]** obviates the need to continue the inquiry with respect to the existence of a meritorious defense and prejudice to plaintiffs. Accordingly, the Court declines to vacate the default judgment against Steve Cheung and Frontier Watch.

*2. Motion For Rule 11 Sanctions.*

*HN3* ⚓ Federal Rule of Civil Procedure 11 states, in relevant part:

"The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleadings, motion, or other paper . . . and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it . . . an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee."

*HN4* ⚓ When it is obvious from the inadequacies of a proposed motion that the attorney who assembled the motion engaged in little or no preliminary factual or legal investigation **[*7]** before filing the motion, Rule 11 directs the Court to impose reasonable costs and attorney's fees against the offending party. Nassau-Suffolk Ice Cream v. Integrated Resources, 118 F.R.D. 45, 48 (S.D.N.Y. 1987), quoting, Wrenn v. New York City Health and Hospitals Corp., 104 F.R.D. 553, 559 (S.D.N.Y. 1985). When a district court finds that an attorney or a party has violated Rule 11, the imposition of sanctions is mandatory. Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 254 n. 7 (2d Cir. 1985).

Sanctions are to be imposed when a competent attorney could not form the requisite reasonable belief as to the validity of what is asserted in the motion. Oliveri v. Thompson, 803 F.2d 1265, 1275 (2d Cir. 1986), cert. denied, 107 S.Ct. 1373 (1987); Eastway Constr. Corp., 762 F.2d at 253-54. However, "in imposing Rule 11 sanctions, the court is to avoid hindsight and resolve all doubts in favor of the signer . . . Rule 11 is violated only when it is 'patently clear that a claim has absolutely no chance of success.'" Oliveri, 803 F.2d at 1275, quoting, Eastway Constr. Corp., 762 F.2d at 254.

Plaintiffs assert that "the motion and accompanying affidavits **[*8]** of Steve Cheung and defendant's counsel contain numerous misrepresentations and are frivolous" and request that "the Court impose sanctions in the amount of $ 3,000 against defendants and their counsel."

Plaintiffs' Opposition to Defendants Cheung's and Frontier Watch, Inc.'s Motion at 11.

Defendants explain the misrepresentations as "an inadvertent error result[ing] in a citation in defendants' memorandum of law using the name of one case when the name of another case was actually intended." Gaffin Reply Affirmation in Support of Motion to Set Aside Default Judgment para. 6 [sic]. Defendants also assert that defendant Cheung did not mislead the Court about his background and his sophistication. Id. at para. 6.

The Court finds that the moving parties have not shown the absence of reasonable inquiry by defendants' attorney or that the motion to vacate the default judgment was asserted for an improper purpose. Cheung's and Frontier's attorney, in a letter dated June 14, 1989, informed this Court of the inadvertent error which appeared in defendants' memorandum of law. On the showing made and the facts reasonably available, it appears that a competent attorney could have formed the **[\*9]** requisite reasonable belief as to the validity of the motion to vacate the default judgment. Since all doubts are to be resolved in favor of the signer, it cannot be said that the motion was frivolous, or that Chueng and Frontier Watch patently had no chance of success.

Plaintiffs' motion for sanctions against Cheung and Frontier Watch is denied.

*II. Defendants Steve Wong, Tommy Wong and WTC Enterprises, Inc.*

*1. Motion to Vacate Default Judgment.*

The second group of defendants, Steve Wong, Tommy Wong, and WTC Enterprises, Inc. also move to vacate the default judgment issued against them in this action. Defendants also move pursuant to Fed. R. Civ. P. 12(b)(5) for insufficiency of service of process. Plaintiffs oppose defendants' motion and claim that the entry of the default judgment was proper. Plaintiffs argue that the service of process was proper and that each defendant had actual notice of the suit against them.

*A. Willfulness of Defendants' Conduct.*

Plaintiffs argue that WTC Enterprisese was properly served with a summons and complaint. They also argue that S. and T. Wong and WTC Enterprises had actual notice of the suit against them and they have waived any **[\*10]** personal jurisdiction defense by their conduct in this action.

In their sworn affidavit, S. Wong and T. Wong stated,

[p]rior to this lawsuit, neither the plaintiffs, their lawyers, or anyone else gave us notice or warned us that we were violating or infringing upon anyone's trademarks.

S. Wong and T. Wong Aff. para. 6.

With respect to service for WTC enterprises, Cindy Wong Steve Wong's sister, should be considered WTC's managing agent. ᴴᴺ⁵ ➔ The Federal Rules provide that a summons and complaint may be served on a corporation "pursuant to the law of the State" in which the District Court is located. See Fed. R. Civ. P. 4(c)(2)(C)(i); M. Prusman, LTD. v. Ariel Maritime Group, 719 F. Supp. 214, 218 (S.D.N.Y. 1989). New York allows service based on delivery of the summons and complaint "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other authorized by appointment or by law to receive service." N.Y. Civ. Prac. L & R. § 311. It is not unusual for a corporation's employees to accept service of process on behalf of the corporation's officers. See M. Prusman, **[\*11]** Ltd. V. Ariel Maritime Group, 719 F. Supp. 214, 220 (S.D.N.Y. 1989). When this occurs, service may be valid, even if the employee were expressly unauthorized by the corporation to accept service, because a "process server cannot be expected to know the corporation's internal practices." Fashion Page,

Get a Document - by Citation - 1990 U.S. Dist. LEXIS 3953   Filed 04/09/13   Page 30 of 94 Page 7 of 9

Case 3.07-cv-00712-JCH   Document 207

Ltd. v. Zurich Ins. Co., 50 N.Y.2d 265, 271, 406 N.E.2d 747, 751, 428 N.Y.S.2d 890, 893-94 (1980). The New York Court of Appeals has commented: "if service is made in a manner which, objectively viewed, is calculated to give the corporation fair notice, the service should be sustained." Fashion Page Ltd. v. Ariel Maritime Group, 719 F. Supp. 214, 218 (S.D.N.Y. 1989); see also Breene v. Guardsmark, Inc., 680 F. Supp. 88, 90-91 (S.D.N.Y. 1987); Dai Nippon Printing Co., Ltd. v. Melrose Publishing Co., 113 F.R.D. 540, 544 (S.D.N.Y. 1986); Kuhlik v. Atlantic Corp., Inc., 112 F.R.D. 146, 148-49 (S.D.N.Y. 1986). New York Courts will find service valid where "the process server has gone to [the corporation's] officers, made proper inquiry of the defendant's own employees, and delivered the summons according to their directions." Fashion Page, 50 N.Y.2d at 272, 406 N.E.2d at 751, 428 N.Y.S.2d at 893-94.

Service of process **[\*12]** on Cindy Wong was sufficient to obtain personal jurisdiction over WTC. When Investigator Fred Kretsch arrived at WTC Enterprises on December 21, 1987, WTC was open for business. Cindy Wong was the only person present and she informed him that no other employees were expected to work that day. WTC Enterprises is a very small business and employs only four individuals, including defendants S. Wong and C. Wong. Furthermore, since Cindy Wong is Steve Wong's sister, plaintiffs reasonably believed that notice of this action would be communicated to her brother, the President of WTC Enterprises. For all the reasons stated above, service upon Cindy Wong as a managing agent of WTC was sufficient, and thus service on WTC Enterprises was proper.

With respect to the Wongs, the Court notes that it is well settled that *HN6* lack of personal jurisdiction is a privileged defense that can be waived by "by failure [to] assert [it] seasonably, by formal submission in a cause, or by submission through conduct." Neirbo Co. v. Bethlehem Corp., 308 U.S. 165 (1939). As noted by " Judge Edelstein of this Court in Burton v. Northern Dutchess Hospital, 106 F.R.D. 477, 480-481 (S.D.N.Y. 1985), although **[\*13]** Rule 12(h)(1) does not provide a time limit for contesting service of process, other than the 20-day period for filing a responsive pleading, the defense must be pursued in a reasonably timely manner or it is waived." Benveniste v. Eiseman, 119 F.R.D. 628, 629 (S.D.N.Y. 1988). In Burton, "the Court ruled that defendants had waived the defense of improper service by failing to avail themselves of opportunities to contest the sufficiency of service of process in the three and one-half years that the action was pending, by participating in extensive discovery and consenting to a change in venue." Benveniste v. Eiseman, 119 F.R.D. 628, 629 (S.D.N.Y. 1988), quoting, Burton, 106 F.R.D at 480-481, accord Sims v. Mme. Paulette Dry Cleaners, 638 F.Supp. 224, 227-28 (S.D.N.Y.1986)(J. Lasker), Vozeh v. Good Samaritan Hospital, 84 F.R.D. 143, 144 (S.D.N.Y. 1979); Merz v. Hemmerle, 90 F.R.D. 566 (E.D.N.Y.1981).

The Federal Rules do not suggest that a defendant may halfway appear in a case, giving plaintiff and the court the impression that he has been served, and at the appropriate time, pull failure of service out of a hat like a rabbit in order to escape default judgment. **[\*14]** To countenance this train of events would elevate formality over substance and would lead plaintiffs to waste time, money, and judicial resources pursuing a cause of action.

Broadcast Music, Inc. v. M.T.S. Enterprises, 811 F.2d 278, 282 (5th Cir. 1987).

In this case, none of the defendants have disputed that they had actual notice of the suit. Steve Wong, President of WTC, was personally served with the temporary restraining order and seizure orders for WTC, T. Wong and himself, and was present while the U.S. Marhalls removed infringing goods from the WTC premises. Furthermore, Steve Wong appeared for a deposition on behalf of himself and WTC. He also conducted settlement negotiations on behalf of all three defendants. For more than a year after defendants had actual notice of this suit, defendants never challenged the propriety of the service of process.

It was only upon the attachment of defendants' assets that defendants alleged that service was improper and attempted to collaterally attack the default judgment. It is too late for such an argument. This litigation has been underway for a year and one-half. Plaintiffs have expended significant time and money in the pursuit **[\*15]** of a recovery from these defendants, and the

Court has devoted substantial time and effort to the adjudication of this case. Steve Wong, Tommy Wong and WTC had actual notice of this litigation and they are estopped from arguing form over substance. The motion to dismiss the judgment on the ground of improper service is denied.

Accordingly, the Court finds the defendants' conduct willful and the Court need not review the issues of the existence of a meritorious defense and prejudice to plaintiff. Defendants, S. Wong's, T. Wong's and WTC's motions to vacate the default judgments and to dismiss the summons and complaint for insufficiency of service of process are denied.

*III. Defendant Panaria International, Inc.*

*1. Motion to Vacate Default Judgment.*

Plaintiffs oppose Panaria's motion to vacate the default judgment entered by this Court. Plaintiffs argue that Panaria was timely served with process and Panaria's last ditch attempt to stay the execution of judgment is unmeritorious and should be denied. The Court agrees.

*A. Willfulness of Defendants' Conduct*

The plaintiffs urge:

"the facts unequivocally show that Panaria received proper notice of the instant action **[*16]** and that its motion is an unwarranted attempt to further delay execution of judgment and deliberately and blatantly misrepresent(s) the facts pertaining to notice."

Plaintiffs Opposition Memorandum at 4.

Yang Cho, President of Panaria, claims that he was first notified of this action on October 11, 1988. Cho Aff. para. 3 He further denies that Panaria was served with a Summons and Complaint in this matter. Cho Aff. para. 4. However, his conduct and prior statements indicate otherwise. Cho admits that upon notification that a dispute involving the merchandise in question existed, Panaria ceased offering it for sale. Cho Aff. para. 7. During the March disposition, Yang Cho appeared for a deposition in this matter in March 1988, on behalf of himself and Panaria. Then in March, Yang Cho acknowledged that Panaria was served with process through Danny Han, the store manager, on the day the U.S. Marshals seized the infringing goods from Panaria's premises. Cho Dep.at 10. Furthermore, the Return of Service filed with the Court indicates that on December 18, 1987, Panaria, through Dan Han, its store manager, was personally served with the summons and complaint. Given these facts the Court **[*17]** concludes that Panaria's default was willful. Therefore, it is unnecessary to continue the inquiry with respect to the existence of a meritorious defense and prejudice to plaintiffs.

Panaria's motion to vacate the default judgment is denied.

*2. Motion for Rule 11 Sanctions.*

Mere failure to prevail on the merits does not require the imposition of sanctions. Rule 11 is "not intend[ed] to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." Nassau-Suffolk Ice Cream, 118 F.R.D. at 48, quoting, Eastway Constr. Corp., 762 F.2d at 254. Plaintiffs assert that Panaria's motion to vacate the default judgment is frivolous and that the Court should impose sanctions against Panaria in the amount of $ 1,500. Plaintiffs' Opposition to Defendant Panaria's Motion at 4-5.

In imposing sanctions, the Court should not have the benefit of hindsight. At the time of signing the Order to Show Cause, Panaria's attorney could have formed the requisite reasonable belief as to the validity of the motion to vacate to default judgment. Plaintiffs have failed to show the

absence of a reasonable inquiry by Panaria's attorney. The Court denies plaintiffs' motion for **[*18]** sanctions against Panaria.

*CONCLUSION*

For the reasons stated above, the Court denies the motions to vacate the default judgments entered against defendants. The Court denies Steve Wong's, Tommy Wong's and WTC Enterprises's motion to dismiss the summons and complaint for insufficiency of service of process.

The Court also denies the motions for imposition of Rule 11 sanctions against Steve Cheung, Frontier Watch Inc. and Panaria International, Inc.

*SO ORDERED.*

Dated: New York, New York

April 9, 1990

Service: **Get by LEXSEE®**
Citation: **1990 U.S. DIST LEXIS 3953**
View: Full
Date/Time: Monday, April 8, 2013 - 11:58 AM EDT

* Signal Legend:
⬤ - Warning: Negative treatment is indicated
🅀 - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
🅐 - Citing Refs. With Analysis Available
🅘 - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

In                    About LexisNexis   | Privacy Policy   | Terms & Conditions   | Contact Us
                      Copyright © 2013 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Help | Sign Out

| Search | Get a Document | Shepard's® | More | | Alerts |

FOCUS™ Terms · · · Advanced... **Get a Document** · View Tutorial

Service: **Get by LEXSEE®**
Citation: **1992 U.S. DIST LEXIS 22517**

*1992 U.S. Dist. LEXIS 22517, \**

ESTATE OF CARROLL D. MALONE, JR., DECEASED, WILLIAM N. MALONE, EXECUTOR, PLAINTIFF AND COUNTER-DEFENDANT VERSUS GENERAL ELECTRIC CREDIT CORPORATION, DEFENDANT AND COUNTER-CLAIMANT, MALONE PROPERTIES, INC., DEFENDANT; GENERAL ELECTRIC CREDIT CORPORATION, THIRD PARTY PLAINTIFF VERSUS LOLITA G. MALONE, THIRD PARTY DEFENDANT

CIVIL ACTION NO. S90-0013 (P)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF MISSISSIPPI, SOUTHERN DIVISION

1992 U.S. Dist. LEXIS 22517

September 4, 1992, Decided
September 8, 1992, FILED

**DISPOSITION:** [\*1] Malone Properties, Inc.'s Motion to Set Aside Default Judgment DENIED.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff executor filed a state court action against defendants, lessor and corporation. The lessor removed the case, alleging fraudulent joinder by the executor to defeat diversity jurisdiction. The court granted the executor's motion to enter default judgment against the corporation. The corporation filed a motion to set aside the default judgment, Fed. R. Civ. P. 60(b), asserting fraud.

**OVERVIEW:** Following the entry of the default judgment, the executor sought to garnish the corporation's insurer, which had refused to defend the corporation. The corporation, then represented by the insurer, argued that the judgment was void because the court lacked subject matter jurisdiction. The court entered the default judgment before having ruled on the executor's motion to remand due to lack of diversity jurisdiction. The court held that by entering the judgment, the court impliedly ruled on the remand motion. Even an erroneous assumption of jurisdiction was conclusive on the parties and not subject to collateral attack. Because the court had authority, in general, to exercise diversity jurisdiction, any error in its ruling was an error in the exercise of jurisdiction, not a total want of jurisdiction. Because the corporation failed to challenge the judgment on direct appeal, Fed. R. App. P. 4(a), the judgment was final. There was no evidence that the executor fraudulently tried to secret matters before the court. Any issue as to the duty of the insurer to defend could have properly been brought by the corporation, and the motion to set aside the default judgment was denied.

Get a Document - by Citation - 1992 U.S. Dist. LEXIS 22517

Case 3.07-cv-00712-JCH Document 201-7 Filed 04/09/13 Page 35 of 94 Page 2 of 9

**OUTCOME:** The court denied the motion to set aside the default judgment.

**CORE TERMS:** default, matter jurisdiction, misrepresentation, final judgment, crash, direct appeal, void, collaterally, misconduct, collateral, diversity, coverage, settlement, fraudulent joinder, automatic stay, lifting, insured, nullity, notice, worker's compensation, beneficiaries, diversity of citizenship, agreed order, refused to defend, void judgment, attacked collaterally, direct review, want of jurisdiction, exercise of jurisdiction, duty to defend

## LEXISNEXIS® HEADNOTES                                                 ⊟ **Hide**

Civil Procedure > Judgments > Preclusion & Effect of Judgments > Prospective & Retroactive Applications 🔦

Civil Procedure > Judgments > Relief From Judgment > Newly Discovered Evidence 🔦

Civil Procedure > Judgments > Relief From Judgment > Prior Judgment Reversed 🔦

*HN1* ⬦ On motion and upon terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or any other reason justifying relief from the operation of the judgment. Fed. R. Civ. P. 60(b).  More Like This Headnote

Civil Procedure > Justiciability > Case or Controversy Requirements > General Overview 🔦

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > Limited Jurisdiction 🔦

Constitutional Law > The Judiciary > General Overview 🔦

*HN2* ⬦ United States District Courts are courts of limited jurisdiction. The character of the controversies over which federal judicial authority may extend are delineated in U.S. Const. art. III, § 2, cl. 1. Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction. Subject matter jurisdiction is thus an Article III as well as a statutory requirement. No action of the parties can confer subject matter jurisdiction on the court. Therefore, consent is irrelevant. A party cannot waive subject matter jurisdiction and the lack of it may be raised at any time in the proceeding. A court, even an appellate court, will raise subject matter jurisdiction on its own motion. A court does not have the power, by judicial fiat, to extend its jurisdiction over matters beyond the scope of the authority granted to it by its creators. At any stage of the proceedings that subject matter jurisdiction is found lacking, the court shall dismiss the action. Fed. R. Civ. P. 12 (h).  More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > Limited Jurisdiction 🔦

Constitutional Law > The Judiciary > Jurisdiction > General Overview 🔦

Governments > Courts > Authority to Adjudicate 🔦

The lower federal courts are all courts of limited jurisdiction, that is, with only the

*HN3* ⤓ jurisdiction which Congress has prescribed. But none the less they are courts with authority, when parties are brought before them in accordance with the requirements of due process, to determine whether or not they have jurisdiction to entertain the cause. Their determinations of such questions, while open to direct review, may not be assailed collaterally.  More Like This Headnote

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview 🔍

Civil Procedure > Pretrial Judgments > Default > Entry of Default Judgments 🔍

Civil Procedure > Judgments > Preclusion & Effect of Judgments > General Overview 🔍

*HN4* ⤓ Every court in rendering a judgment, tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter. Further, federal court judgments are binding notwithstanding the simple lack of subject matter jurisdiction whether the jurisdictional question was even actually litigated or not.  More Like This Headnote

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview 🔍

Civil Procedure > Pretrial Judgments > Default > Default Judgments 🔍

Civil Procedure > Judgments > Preclusion & Effect of Judgments > General Overview 🔍

*HN5* ⤓ Even if the court erred in entertaining jurisdiction, its determination of that matter is conclusive upon the parties before it and it can not be questioned by them collaterally. Even if the court's determination of subject matter jurisdiction were demonstrably wrong a judgment that has become final, without the benefit of a direct appeal, is not a nullity or truly void for it cannot be attacked collaterally.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Jurisdiction > Diversity Jurisdiction > General Overview 🔍

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview 🔍

Civil Procedure > Judgments > Relief From Judgment > Void Judgments 🔍

*HN6* ⤓ A determination of subject matter jurisdiction based on diversity of citizenship is considered a "quasi jurisdictional" fact, a mere finding of which, regardless of actual existence, is sufficient, and such finding, while open to direct review, may not be attacked collaterally.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview 🔍

Civil Procedure > Judgments > Preclusion & Effect of Judgments > General Overview 🔍

Governments > Courts > Authority to Adjudicate 🔍

*HN7* ⤓ Where there is a clear usurpation of power when a court wrongfully extends its jurisdiction beyond the scope of its authority, the judgment is a nullity.  More Like This Headnote

Get a Document - by Citation - 1992 U.S. Dist. LEXIS 22517   Page 4 of 9

Case 3:07-cv-00122-JCH   Document 201   Filed 04/09/13   Page 37 of 94

Civil Procedure > Pretrial Judgments > Default > Default Judgments 🔍

Civil Procedure > Judgments > Relief From Judgment > Fraud 🔍

Evidence > Procedural Considerations > Burdens of Proof > Clear & Convincing Proof 🔍

*HN8*⚓Fraud is never presumed and must be proved by clear and convincing evidence. The burden of proving fraud is on the one making the allegations.  More Like This Headnote

Governments > Courts > General Overview 🔍

Workers' Compensation & SSDI > Administrative Proceedings > Fraud 🔍

Workers' Compensation & SSDI > Administrative Proceedings > Settlements 🔍

*HN9*⚓The court is charged with knowledge of matters pending before it.  More Like This Headnote


**JUDGES:** CHARLES W. PICKERING, SR., UNITED STATES DISTRICT JUDGE

**OPINION BY:** CHARLES W. PICKERING, SR.

**OPINION**


***MEMORANDUM OPINION AND ORDER***

This matter is before the Court on Defendant Malone Properties, Inc.'s Motion to Set Aside Default Judgment entered against it on March 14, 1991. The Court having reviewed the motion, the briefs of the parties and the authorities cited and being otherwise fully advised in the premises, finds that the motion is not well taken and should be denied and finds specifically as follows, to-wit;

***FACTUAL BACKGROUND***

On December 2, 1983, there was a plane crash involving the Decedent, Carroll D. Malone, Jr., his wife Lolita G. Malone and one other passenger along with pilot Joe Fail. They were returning to Gulfport from a restaurant opening in New Orleans. Defendants assert that Carroll D. Malone, Jr., who was the sole shareholder of Malone Properties, Inc., was an employee of Malone Properties, Inc., and was acting within the course and scope of his employment at the time of the crash. Joe Fail died in the crash or shortly thereafter. Carroll D. Malone, Jr. died from injuries received **[*2]** in the crash on December 16, 1985.

An estate was opened for Carroll D. Malone, Jr. in Harrison. County, Mississippi on July 24, 1984. Lolita G. Malone and William N. Malone are named co-executors. On February 28, 1985, William N. Malone files a petition in Harrison County Chancery Court to have Lolita G. Malone removed as co-executor. At some point thereafter, she was so removed.

On April 12, 1985, the beneficiaries of Carroll D. Malone, Jr. are granted authority to apply for and receive a lump sum worker's compensation settlement by the Harrison County Chancery Court. Carroll D. Malone, Sr. is appointed the general guardian of Carroll D. Malone, Jr.'s two minor sons. The beneficiaries allege, in the petition seeking Court approval of the settlement, that Carroll D. Malone, Jr. was an employee of Malone Properties, Inc. and was acting within the course and scope of his employment at the time of the crash.

On December 6, 1985, Lolita G. Malone files a wrongful death action for the death of Carroll D. Malone, Jr. sounding in products liability against Beech Aircraft. This case is removed to federal court as S88-0588. On December 1, 1989, William N. Malone, as executor of the Estate **[\*3]** of Carroll D. Malone, Jr., Deceased, files a wrongful death action in the Circuit Court of Harrison County against General Electric ▾Credit Corporation (GECC) and Malone Properties, Inc. GECC was the owner of the plane and was leasing it to Malone Properties, Inc. at the time of the crash. This suit alleges vicarious liability based on the negligence of the pilot, Joe Fail.

On January 8, 1990, GECC removes Plaintiff's suit to this Court as the present action, S90-0013, alleging fraudulent joinder of Malone Properties, Inc. and thus complete diversity of jurisdiction, and third parties in Lolita G. Malone and the Estate of Joe Fail. On December 12, 1990, this Court quashes process and dismisses the third party complaint against the Estate of Joe Fail on statute of limitations grounds.

On February 13, 1991, thirteen months after removal, William N. Malone, as executor of the Estate of Carroll D. Malone, Jr., Deceased, files a motion to remand or in the alternative to consolidate with Lolita G. Malone's case, S88-0588. Plaintiff alleges that there was no fraudulent joinder, that Malone Properties, Inc. was a proper party and that there was not complete diversity, thus defeating jurisdiction **[\*4]** of the federal court.

On February 15, 1991, Plaintiff filed an entry of default against Malone Properties, Inc. which had, on March 11, 1986, filed petition for relief under Title 11 of the United States Code. An agreed order lifting the automatic stay to allow Plaintiff to proceed against Malone Properties, Inc. to the extent of any insurance coverage had been entered on May 9, 1990. Malone Properties, Inc. was insured by the Insurance Company of America (INA) who had been repeatedly requested to come in and defend Malone Properties, Inc. by the plaintiff and the Bankruptcy Trustee. INA's policy provides that it will defend covered claims whether the insured is insolvent or not. However, to that point in time, INA had failed and refused to defend. INA had provided a defense to the Estate of Joe Fail which had resulted in its dismissal of December 12, 1990.

On March 14, 1991, this Court conducted a hearing for Determination of Damages and for Entry of Final Judgment on Plaintiff's entry of default against Malone Properties, Inc. The Court thereupon entered judgment in favor of Plaintiff and against Malone Properties, Inc. in the amount of $ 3,091,157.00.

On January 22, 1992, Malone **[\*5]** Properties, Inc., now being provided representation by INA, file the present motion to set aside that default. Apparently, what has precipitated this action by INA was a garnishment, or attempted garnishment, of INA by Plaintiff pursuant to the March 14, 1991, Default Judgment.

On February 2, 1992, INA filed a motion for reconsideration of the agreed order lifting the automatic stay in the Bankruptcy Court. INA claimed that it did not receive notice that the stay had been lifted and alleged deprivation of property without due process of law in violation of the Fourteenth Amendment. Malone Properties, Inc, now also argues to this Court that INA was entitled to notice of the lifting of the automatic stay. However, Judge Gaines rendered this argument moot on June 17, 1992, when he entered a well reasoned opinion and order denying INA's motion in the Bankruptcy Court. This Court agrees with the reasoning and holding of Judge Gaines' opinion on that motion.

The Defendant's principal argument is that this Court lacked subject matter jurisdiction when it entered the Default Judgment on March 14, 1991, thus rendering the judgment void from the beginning. Secondarily, the Defendant argues **[\*6]** that the Default Judgment was procured through misrepresentation and fraud.

### THE DEFAULT JUDGMENT

This Default Judgment which was entered on March 14, 1991, is a Final Judgment as between the plaintiff and Defendant Malone Properties, Inc. The Defendant had thirty days from that date to attack this judgment by filing a Notice of Appeal. Fed.R.App.P., Rule 4(a). This was not done. The question that now confronts this Court is whether or not this Default Judgment may be collaterally attacked.

The Defendant has moved to set aside the Default Judgment under Rules 54(b) and 60(b), Fed.R.Civ.P. Rule 54(b) has no application to this action as the Court has made the requisite finding that the March 14, 1991, Default Judgment is a "Final Judgment". The provisions of Rule 60(b) relied on by Defendant provide:

> *HN1*(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.
>
> On motion and upon terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct **[\*7]** of an adverse party; . . . (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Even though Defendant argues that the Default Judgment is void, he has not specifically requested relief under Rule 60(b)(4) which provides relief when "(4) the judgment is void;". The Court will address this ground as well as the others asserted by Defendant.

### FEDERAL DISTRICT COURT JURISDICTION

*HN2*United States District Courts are courts of limited jurisdiction. "The character of the controversies over which federal judicial authority may extend are delineated in Art. III, § 2, cl. 1. Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982). Subject matter jurisdiction is thus an Article III as well as a statutory requirement. No **[\*8]** action of the parties can confer subject matter jurisdiction on the court. Therefore, consent is irrelevant. *California v. LaRue*, 409 U.S. 109, 34 L. Ed. 2d 342, 93 S. Ct. 390 (1972). A party cannot waive subject matter jurisdiction and the lack of it may be raised at any time in the proceeding. A court, even an appellate court, will raise subject matter jurisdiction on its own motion. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. at 702. *See also Moore v. United Services Auto Ass'n.*, 819 F.2d 101 (5th Cir. 1987). "A court does not have the power, by judicial fiat, to extend its jurisdiction over matters beyond the scope of the authority granted to it by its creators." *Stoll v. Gottlieb*, 305 U.S. 165, 171, 83 L. Ed. 104, 59 S. Ct. 134 (1938). At any stage of the proceedings that subject matter jurisdiction is found lacking, ". . . the court shall dismiss the action". Rule 12(h), Fed.R.Civ.P.

However, as Chief Justice Hughes stated while recognizing that district courts are courts of limited jurisdiction with the authority to determine the bounds of that jurisdiction:

> *HN3*The lower federal courts are all courts of limited jurisdiction, **[\*9]** that is, with only the jurisdiction which Congress has prescribed. But none the less they are courts with authority, when parties are brought before them in accordance with the requirements of due process, to determine whether or not they have jurisdiction to

entertain the cause . . . . Their determinations of such questions, while open to
direct review, may not be assailed collaterally.

*Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 376, 84 L. Ed. 329, 60 S. Ct.
317 (1940).

### ASSUMING JURISDICTION

It is true that the plaintiff had a Motion to Remand alleging no diversity of citizenship pending
at the time the Default Judgment was entered and that the Defendant GECC had removed this
action on the basis of fraudulent joinder of Malone Properties, Inc., thus alleging complete
diversity. Neither of these matters had been directly addressed by the Court at the time the
Default Judgment was entered. Nevertheless, this court impliedly overruled Plaintiff's motion
and entertained subject matter jurisdiction by entering the Default Judgment. For *HN4* "every
court in rendering a judgment, tacitly, if not expressly, determines its jurisdiction over
the **[*10]** parties and the subject matter." *Stoll v. Gottlieb,* 305 U.S. 165, 172, 83 L. Ed. 104,
59 S. Ct. 134. Further, it is clear that federal court judgments are binding notwithstanding the
simple lack of subject matter jurisdiction whether the jurisdictional question was even actually
litigated or not. *See Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 378, 84
L. Ed. 329, 60 S. Ct. 317. *See also* 18 Wright, Miller & Cooper, *Federal Practice and Procedure:
Jurisdiction* § 4428 at 282 (1981).

However, *HN5* even if this court erred in entertaining jurisdiction, its determination of that
matter is conclusive upon the parties before it and it can not be questioned by them
collaterally. Id. at 175. Even if the Court's determination of subject matter jurisdiction were
"demonstrably wrong" a judgment that has become final, without the benefit of a direct appeal,
is not a nullity or truly void for it cannot be attacked collaterally. *See Yanow v. Weyerhaeuser
Steamship Company,* 274 F.2d 274 (9th Cir. 1959). The Default Judgment may have been
erroneous, and may have been reversed on a direct appeal, but it is not an absolute nullity.
*Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. at 376. This is so because *HN6* a
determination **[*11]** of subject matter jurisdiction based on diversity of citizenship is
considered a "quasi jurisdictional" fact, a mere finding of which, regardless of actual existence,
is sufficient, and such finding, while open to direct review, may not be attacked collaterally.
*Stoll v. Gottlieb,* 305 U.S. at 177. *See also Chicot County Drainage Dist. v. Baxter State Bank,
supra;* and *Yanow v. Weyerhaeuser Steamship Company, supra.*

### LACK OF SUBJECT MATTER JURISDICTION AND VOID JUDGMENTS

Certainly, the absence of subject matter jurisdiction may, in certain cases, render a judgment
entirely void. For instance, *HN7* where there is a clear usurpation of power when a court
wrongfully extends its jurisdiction beyond the scope of its authority, the judgment is a nullity.
*Kansas City Southern Ry. Co. v. Great Lakes Carbon,* 624 F.2d 822, 825 (8th Cir. 1980). Such a
usurpation of power requires a "total want of jurisdiction" as distinguished from "an error in the
exercise of jurisdiction." *Lubben v. Selective Service System,* 453 F.2d 645 (1st Cir. 1972).
Therefore, since this court has the authority to entertain diversity jurisdiction, the exercise
thereof in this action is not a **[*12]** "total want of jurisdiction" but merely "an error in the
exercise of jurisdiction". The Default Judgment entered on March 14, 1991, against defendant
Malone Properties, Inc. is not a "void" judgment subject to collateral attack. The Defendant's
failure to attack the judgment on direct appeal sealed its fate.

Additionally, INA is bound by the judgment against its insured, Malone Properties, Inc. if the
underlying cause of action was within the coverage of the policy, and INA failed to defend when
it had a legal duty to do so. *See Caplan v. Johnson,* 414 F.2d 615 (5th Cir. 1969); and
*Maryland Casualty Co. v. Mitchell,* 322 F.2d 37 (5th Cir. 1963). Of course, the Court is not
making a determination that INA had the duty to defend or that there was coverage under the
terms of the subject policy. From a cursory review of the policy, however, it appears that there

was indeed coverage and, thus, a consequent duty to defend.

This Court's ruling is in conformity with a prior ruling of this Court in *Buice v. Knight,* No. S87-0517(G) (S.D. Miss. April 25, 1991, Walter J. Gex, III, J.). The Court would further note that all of the cases cited by the Defendant, Malone Properties, Inc., **[*13]** are not on point in this case because they all deal with direct appeals rather than collateral attacks. As the Court has pointed out above, this is a critical difference which governs the outcome of this motion.

### *FRAUD, MISREPRESENTATION AND MISCONDUCT*

Finally, as concerns Defendant's argument that the Default Judgment was procured by fraud and misrepresentation pursuant to Rule 60(b)(3), *HN8* fraud is never presumed and must be proved by clear and convincing evidence. *Saenz v. Kenedy,* 178 F.2d 417 (5th Cir. 1949). The burden of proving fraud is on the one making the allegations. *Cliett v. Hammonds,* 286 F.2d 471 (5th Cir. 1961), *cert. den.* 366 U.S. 960, 81 S. Ct. 1921, 6 L. Ed. 2d 1253.

Defendant Malone Properties, Inc. makes general allegations about Plaintiff's fraud and misrepresentations to the Court regarding pending motions and collateral awards received by the Plaintiff. All of these matters were before the Court at the time the Default Judgment was entered. This includes the fact that certain beneficiaries of Carroll D. Malone, Jr. had received the worker's compensation settlement which could have been asserted as a grounds for relief by this Defendant **[*14]** in this Court or on direct appeal. To say that it would have asserted this as a defense if it had defended is, at this point, of no consequence as to the finality of the Default Judgment. This Defendant's inaction in defending this matter cannot now be used as a basis to collaterally attack a valid final judgment of this Court.

*HN9* The Court is charged with knowledge of matters pending before it. There is no legitimate proof that Plaintiff tried to secret any of the matters, including the prior worker's compensation settlement, which this Defendant now claims amounts to fraud, misrepresentation or misconduct on the part of the Plaintiff. Defendant has not offered any evidence of a clear and convincing nature that Plaintiff perpetrated a fraud on the Court. Likewise, Defendant has failed to show any misrepresentation or misconduct that would rise to a level which would cause the Court to set aside the Default Judgment.

### *THE HEARING TO DETERMINE DAMAGES*

Plaintiff's counsel was present at the hearing to determine damages on March 14, 1991, and answered all questions propounded to him in regard to this action. The fact that the Court erred in exercising jurisdiction is not **[*15]** chargeable to Plaintiff. Defendant had every opportunity to come in and defend this action on the merits. The fact that Malone Properties, Inc. sat by for fifteen months before default was entered and then sat by for an additional ten months after default was entered is directly chargeable to Defendant's insurer, INA, who refused to defend. If INA had a legitimate defense to Malone's request to be defended, it could and should have been litigated and this action stayed pending a ruling on that question. INA did come in and defend another defendant in this action and was successful in getting that defendant dismissed. All of the issues pressed by the Defendant could have been properly brought before the Court had an appearance been made on behalf of Malone Properties, Inc. Even after the Default Judgment was entered, it could have been appealed. To try to relitigate this matter at this stage of the proceeding is a collateral attack on a valid *final* judgment which is simply not allowed. Defendant has further failed to show "any other reason justifying relief from the operation of the judgment" under Rule 60(b)(6), Fed.R.Civ.P.

"It is just as important that there should be a place **[*16]** to end as that there should be a place to begin litigation." *Stoll v. Gottlieb,* 305 U.S. at 172. This litigation is at an end.

Having reviewed all of Defendant Malone Properties, Inc.'s grounds for relief set forth in its motion, and finding them to be without merit;

Get a Document - by Citation - 1992 U.S. Dist. LEXIS 22517    Page 9 of 9

Case 3:01-cv-00722-SCH    Document 201    Filed 04/09/13    Page 42 of 94

IT IS THEREFORE ORDERED THAT Malone Properties, Inc.'s Motion to Set Aside Default Judgment is DENIED in its entirety.

SO ORDERED AND ADJUDGED this the 4th day of September, 1992.

CHARLES W. PICKERING, SR.

UNITED STATES DISTRICT JUDGE

Service: **Get by LEXSEE®**
Citation: **1992 U.S. DIST LEXIS 22517**
View: Full
Date/Time: Monday, April 8, 2013 - 11:58 AM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

In

About LexisNexis   | Privacy Policy   | Terms & Conditions   | Contact Us
Copyright © 2013 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Get a Document - by Citation - 1990 U.S. Dist. LEXIS 3852    Page 1 of 13

Case 3:07-cv-00712-JCH   Document 202   Filed 04/09/13   Page 44 of 94

Help | Sign Out

| Search | Get a Document | *Shepard's®* | More | | Alerts |
|---|---|---|---|---|---|

FOCUS™ Terms                     Advanced...  **Get a Document**          View
                                                                          Tutorial

Service:  **Get by LEXSEE®**
Citation:  **1990 U.S. DIST LEXIS 3852**

*1990 U.S. Dist. LEXIS 3852, \**

METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff, v. HERBERT CAMMON, Defendant

No. 88 C 5549

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN
DIVISION

1990 U.S. Dist. LEXIS 3852

April 6, 1990, Decided

## CASE SUMMARY

**PROCEDURAL POSTURE:** In a declaratory judgment action brought by plaintiff insurer to
have an insurance policy declared null and void, defendant beneficiary moved to vacate the
default judgment and to reconsider the court's determination that his motion to dismiss and
leave to file an appearance were moot when submitted.

**OVERVIEW:** Plaintiff insurer sought a declaration that an insurance policy was null and void
because defendant beneficiary killed his wife in order to collect insurance proceeds. The court
granted insurer's request for default judgment when it found that beneficiary refused to
comply with insurer's discovery requests, reneged on an agreement with opposing counsel,
and ignored the court's directives. Beneficiary moved to vacate the judgment and to
reconsider the court's determination that his motion to dismiss and leave to file an
appearance were moot when submitted. The motions were denied. Applying Fed. R. Civ. P.
60(b), the court found that there was no assertion that beneficiary's default was due to
neglect. Neither did beneficiary make an argument which could conceivably be construed as
asserting that he had recently come upon relevant evidence. Even if beneficiary were to
establish that jurisdiction was improper, he could not collaterally attack jurisdiction because
the court did not "plainly usurp" jurisdiction. The court did not find any special circumstances
that justified granting the relief beneficiary sought. Beneficiary failed to establish "good
cause" for vacating the judgment.

**OUTCOME:** The court did not find any special circumstances that justified granting the relief
beneficiary sought and denied his motions to vacate judgment and reconsider the court's
determination that his motion to dismiss and leave to file an appearance were moot when
submitted.

**CORE TERMS:** default judgment, probate, discovery, default, former counsel, matter
jurisdiction, diversity, good cause, place of business, void, collateral attack, reconsider,

Get a Document - by Citation - 1990 U.S. Dist. LEXIS 3852

Case 3:07-cv-00712-JCH   Document 201   Filed 04/09/13   Page 45 of 94   Page 2 of 13

insurer, vacate, moot, entry of default, leave to file, defense counsel, additionally, declaratory, appearance, mistake of law, jurisdictional, citizenship, logically, excusable, resident, invoke, pure, probate estate

## LEXISNEXIS® HEADNOTES                                           ⊟ **Hide**

Civil Procedure > Judgments > Relief From Judgment > Motions to Alter & Amend 🔖

*HN1*⊥ Fed. R. Civ. P. 59(e) is invoked where the court has made an error in interpreting law or facts, or where there has been a significant change in the law or facts since the submission of the issue to the court. Often entitled a "motion to reconsider," this procedural device is not at the disposal of parties who want to "rehash" old arguments. Nor is the motion to be used to present evidence that could have been adduced during the pendency of the original motion.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Discovery > Misconduct 🔖

*HN2*⊥ A "mistake of law" standard of review would be proper only if Fed. R. Civ. P. 37(b)(2) is inapplicable in the first instance.  More Like This Headnote

Civil Procedure > Pretrial Judgments > Default > Default Judgments 🔖

Civil Procedure > Pretrial Judgments > Default > Relief From Default 🔖

Civil Procedure > Judgments > Relief From Judgment > Excusable Neglect & Mistakes >
     General Overview 🔖

*HN3*⊥ Fed. R. Civ. P. 55(c) provides that upon a showing of good cause, a court may set aside an entry of default, however, where a judgment by default has been entered, Fed. R. Civ. P. 60(b) applies. Thus, where a default judgment as opposed to merely an entry of default has been rendered, Rule 60(b) provides the relevant standard for relief. The parallels in the standards of granting an entry of default and granting a default judgment have resulted in parallel standards for relief as well. Thus, an application of one rule as opposed to the other has a negligible impact on the outcome.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Judgments > Relief From Judgment > Excusable Neglect & Mistakes >
     Excusable Neglect 🔖

Civil Procedure > Judgments > Relief From Judgment > Excusable Neglect & Mistakes > Inadvertence 🔖

Civil Procedure > Judgments > Relief From Judgment > Excusable Neglect & Mistakes > Mistake 🔖

*HN4*⊥ Fed. R. Civ. P. 60(b) provides the standards by which the motion must be decided as follows: (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment on which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a

reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment was entered or taken. More Like This Headnote

Civil Procedure > Judgments > Relief From Judgment

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

*HN5* Although Fed. R. Civ. P. 60(b) relief is generally left to the sound discretion of the district court, only a compelling justification warrants the opening of a final judgment. The Rule 60(b) standard is applied even more stringently to default judgments than to other types of judgments. Relief from judgment under Rule 60(b) is an extraordinary remedy and is granted only in exceptional circumstances. The standard of review for a denial of review of a Rule 60(b) motion is whether or not the district court abused its discretion. Exceptional circumstances warranting relief are present only where the movant can demonstrate (1) good cause for the error, (2) timely action to correct it, and (3) a meritorious claim or defense. More Like This Headnote

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview

Civil Procedure > Judgments > Relief From Judgment > Void Judgments

*HN6* Fed. R. Civ. P. 60(b)(4) provides that relief may be granted where the judgment is void. More Like This Headnote

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview

Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata

Civil Procedure > Appeals > Appellate Jurisdiction > Collateral Order Doctrine

*HN7* A federal district court's erroneous exercise of subject matter jurisdiction is not subject to collateral attack. The court has the authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, while open to direct review, is res judicata in a collateral action. It is irrelevant that the court did not explicitly rule on the issue of its subject matter jurisdiction; if the objection could have been raised, res judicata applies to bar a collateral attack. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview

Civil Procedure > Appeals > Appellate Jurisdiction > Collateral Order Doctrine

*HN8* The exception to the rule prohibiting collateral attack on a court's subject matter jurisdiction involves situations where a district court "usurps" jurisdiction as opposed to erroneously determining that it has jurisdiction. A court will be deemed to have plainly usurped jurisdiction only when there is a total want of jurisdiction and no arguable basis on which it could have rested a finding that it had jurisdiction. Where there is a reasonable basis for jurisdiction, there can be no collateral attack. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > Business Entities

Constitutional Law > The Judiciary > Jurisdiction > Diversity

*HN9* Where a party brings an action for damages directly against the insurer of a policy for liability insurance, the "direct action" provision of 28 U.S.C.S. § 1332 dictates that an insurer is deemed a resident of the state in which the insured resides as well as a resident of its state of incorporation and its principal place of business.  More Like This Headnote

Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview

Insurance Law > Claims & Contracts > Declaratory Relief > General Overview

*HN10* The "direct action" provision, 28 U.S.C.S. § 1332, applies only where the insurer is the defendant in the action.  More Like This Headnote

Civil Procedure > Judgments > Relief From Judgment

*HN11* Fed. R. Civ. P. 60(b)(6) provides that the court may consider any other reason justifying relief under this rule. Relief under this subsection is given in situations where a judgment was obtained by the improper conduct of the party in whose favor it was rendered or where it resulted from the excusable default of the party against whom judgment was entered. However, where an unfavorable judgment results from a deliberate choice of trial strategy, relief under this subsection is inappropriate. Similarly, incompetence or gross negligence on the part of counsel coupled with innocence on the part of the party is insufficient.  More Like This Headnote

Civil Procedure > Judgments > Relief From Judgment > General Overview

Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule

*HN12* A judgment must be set forth on a separate sheet of paper and must describe the relief to which the prevailing is entitled and not simply record that a motion has been granted.  More Like This Headnote

**OPINION BY:** [*1] KOCORAS

**OPINION**

MEMORANDUM OPINION

CHARLES P. KOCORAS, UNITED STATES DISTRICT JUDGE

This matter comes before the Court on defendant's motion to vacate this Court's November 7, 1989, entry of default and to reconsider its determination that defendant's motion to dismiss and leave to file an appearance were moot when submitted. For the reasons set forth below, defendant's motions are denied.

BACKGROUND

This motion arises out of a declaratory judgment action by plaintiff

Metropolitan Life Insurance Company.  ↓In its complaint, plaintiff sought a declaration that an insurance policy, issued on the life of defendant Herbert Cammon's wife, was null and void. Plaintiff's complaint asserted that because defendant killed his wife in order to collect insurance proceeds as the beneficiary under the policy, and procured the policy with the intent to do so, the insurance contract was null and void by reason of defendant's breach of the contractual duty of good faith and fair dealing and by reason of defendant's attempt to defraud Metropolitan.

The history of the proceedings in this case is long and complicated. Briefly though, it is a saga of defendant's repeated refusal to comply with plaintiffs **[*2]** attempt to conduct discovery. Plaintiff first served defendant with a Request for the Production of Documents on December 5, 1988. After numerous requests by opposing counsel, several extensions of time in which to comply with the request, an attorney's conference pursuant to Local Rule 12(D), and constant intervention by this Court, defendant had not complied with this initial request by the court-ordered deadline of October 6, 1989. Plaintiff moved for a default judgment pursuant to Federal Rule 37 (b)(2)(c).

In response to plaintiff's motion for default judgment, defendant's primary defense was that the documents plaintiff requested were located in the files of defendant's criminal attorney and thus were not within defendant's control. Defendant, however, also contended that much of the material that plaintiff had requested was irrelevant. Finally, defendant relied on the withdrawal of several attorneys throughout the life of the case to justify his failure to comply.

This Court, however, found defendant's arguments unpersuasive. Accordingly, on November 7, 1989, finding that defendant had repeatedly refused to comply with plaintiff's discovery requests, reneged on an agreement **[*3]** with opposing counsel pursuant to the 12(D) conference, and ignored this Court's directives, we granted plaintiff's request for default judgment.

On the very day that this Court issued its ruling of default, defendant attempted to file two emergency motions. Mr. Frederick Rothenberg, who up to that day had appeared on behalf of defendant in an advisory capacity, sought leave to file an appearance as defendant's counsel of record. Additionally, defendant and Mr. Rothenberg presented the Court with a motion to dismiss. The Court, however, determined that the motions were moot as being raised after the Court's default ruling.

Defendant's current motion was filed in response to the Court's ruling of default. Defendant asks this Court to vacate the November 7, 1989 ruling, which would have the effect of making viable defendant's two emergency motions. Defendant would then have the Court reconsider defendant's motion to dismiss and Mr. Rothenberg's motion for leave to file an appearance. Defendant invokes both Federal Rule of Civil Procedure 55(c) and Federal Rule 59.

In response, plaintiff claims that this Court may not vacate and or reconsider its prior ruling because defendant has failed **[*4]** to satisfy the criteria for such relief. Specifically, plaintiff contends that defendant has failed to raise any newly discovered facts or cite a mistake of law to support his motion to vacate. Thus, defendant has failed to establish good cause for vacating. Additionally, plaintiff contends that should this Court find it necessary to address defendant's motion to dismiss, the arguments raised therein are without merit.

DISCUSSION

I. Procedure

The defendant relies on two federal rules of procedure as entitling him to relief. Defendant cites Federal Rule 55(c), which provides for setting aside an entry of default, and Federal Rule 59(e), which provides for altering a judgment, as providing the proper standards for reviewing our prior ruling. The two rules are not identical nor are both necessarily appropriate in this case.

Because defendant does not specifically address the requirements for relief under these rules or apply the facts in this case to either rule's framework, it is difficult to discern which rule defendant seeks to invoke. Moreover, discerning the proper procedural mechanism to apply to defendant's motion actually requires an evaluation of three federal procedural rules **[*5]** and the relationship between them. Accordingly, before proceeding further, we find it necessary to clarify the standard applicable to defendant's motion.

Initially, we note that the standard for relief under Rule 59(e) is at odds with the action defendant seeks through this motion. **HN1** Rule 59(e) is invoked where the court has made an error in interpreting law or facts, or where there has been a significant change in the law or facts since the submission of the issue to the court. Refrigeration Sales Co. v. Mitchell-Jackson, Inc., 605 F. Supp. 6 (N.D. Ill. 1983). Often entitled a "motion to reconsider," this procedural device is not at the disposal of parties who want to "rehash" old arguments. Refrigeration Sales, 605 F. Supp. at 7. Nor is the motion to be used to present evidence that could have been adduced during the pendency of the original motion. Refrigeration Sales, 605 F. Supp. at 8.

Defendant does not argue that the Court made an error of law or fact in granting plaintiff's request for a default judgment. Indeed, defendant cannot logically argue that the Court made a mistake of law. The Court's determination under Rule 37 was a discretionary decision and thus subject **[*6]** to review under an abuse of discretion standard. See Tamari v. Bache & Co. (Lebanon), 729 F.2d 469 (7th Cir. 1984). Consequently, **HN2** a "mistake of law" standard of review would be proper only if Rule 37(b)(2) was inapplicable in the first instance and defendant does not argue that Rule 37(b)(2) was inapplicable. Similarly, the defendant does not present any facts that were not available at the time of the underlying motion. Essentially, defendant is "rehashing" old arguments, an inappropriate tactic under the Rule 59(e) standard.

More significantly, however, default judgments are dealt with in a specific way in Federal Rule of Civil Procedure 55(c). The existence of a rule addressed specifically to default judgments suggests that rule 59(e) was not intended to apply to default judgments. It would seem inconsistent that two statutes provide for the same relief in the same procedural code, however, these provisions can and should be construed in such a way that they can co-exist. See Morton v. Mancari, 417 U.S. 535 (1973). Typically, the more specific rule or provision governs over the general. Thus in this situation, rule 55(c), which applies specifically to default judgments **[*7]** logically would govern.

Moreover, the language of Rule 59(e) and the case law construing that language also indicates that applying Rule 59(e) to declaratory judgments would be redundant. The language of the rule which provides that the judgment may be altered or amended does not appear logically to be applicable to default judgments. Any alteration or amendment to a default judgment based on a mistake of fact or law would most likely result in its reversal. A default judgment by its very nature contemplates that the decision was based on some conduct on the part of the defendant such that the defendant is not entitled to pursue his defense. Typically default is entered because defendant failed to comply with discovery or took actions which caused undue delay. Thus, altering or amending a default judgment would require that the court find the factual predicate for its decision to be unsound or that the rule itself was inapplicable. Such a determination, however, would effectively compel vacating the judgment. Any sort of lesser alteration or amendment would have no impact on a default judgment. This result would make 59(e) redundant with 55(c) as it applies to default judgments. Such **[*8]** a result could not logically have been intended. It is more likely that Rule 55(c) was intended to override 59(e) with respect to default judgments. Accordingly, we will adopt Rule 55(c)'s standards for this analysis.

Furthermore, defendant's request that this Court reconsider its decision that defendant's motion to dismiss and motion for leave to file an appearance were moot when presented turns on whether the Court's default judgment was valid when entered. Thus, if that judgment is susceptible to being vacated, the defendant's emergency motions were not moot when presented and thus should be considered on their merits.

## II. Motion to Vacate Default Judgment

*HN3* Federal Rule of Civil Procedure 55(c) provides that upon a showing of good cause, a court may set aside an entry of default, however, where a judgment by default has been entered, Rule 60(b) applies. Fed. R. Civ. P. 55(c). Thus in this case, where a default judgement as opposed to merely an entry of default has been rendered, Rule 60(b) provides the relevant standard for relief. The parallels in the standards of granting an entry of default and granting a default judgment have resulted in parallel standards for relief as well. **[*9]** 10 Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 2694 (1983). Thus, an application of one rule as opposed to the other has a negligible impact on the outcome.

*HN4* Rule 60(b) of the Federal Rules of Civil Procedure provides the standards by which this motion must be decided. The rule is entitled "Relief From Judgment or Order" and the grounds it sets forth as justifying such relief are as follows:

(b) *Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud, . . . misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment on which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion **[*10]** shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment. . . was entered or taken.

The Seventh Circuit Court of Appeals has glossed the standard for granting relief under subsection (b). In so doing, the court has indicated in no uncertain terms that *HN5* although Rule 60(b) relief is generally left to the sound discretion of the district court, only a compelling justification warrants the opening of a final judgment. The Rule 60(b) standard is applied even more stringently to default judgments than to other types of judgments. Chrysler Credit Corp. v. Macino, 710 F.2d 363 (7th Cir 1983). Thus, the Seventh Circuit has written: "[r]elief from judgment under Rule 60(b) is an extraordinary remedy and is granted only in exceptional circumstances. The standard of review for a denial of review of a Rule 60(b) motion is whether or not the district court abused its discretion." United States v. One 1979 Rolls-Royce Corniche, 770 F.2d 713, 716 (7th Cir. 1985) (citations omitted). Exceptional circumstances warranting relief are present only where the movant can demonstrate (1) good cause for the error, (2) timely action to correct **[*11]** it, and (3) a meritorious claim or defense. See e.g., id.; Brewer Electric Mfg. Co. v. Torando Systems of Am., 687 F.2d 182, 185 (7th Cir. 1982 ). With these general principles in mind, we proceed to examine the defendant's claim for relief.

Discussion of what constitutes "good cause" for purposes of Rule 60(b) relief invariably involves a discussion of one of the rule's six delineated grounds for relief. Thus, while courts addressing this question do not explicitly equate "good cause" with a delineated ground for relief under the rule, the analysis in most cases addressing the issue implicates such a result. See, e.g., Dundee Cement Co. v. Howard Pipe & Concrete Prod., 722 F.2d 1319 (7th Cir. 1983); National Business Systems, Inc. v. Am Intern'l, Inc., 607 F. Supp. 1251 (N.D. Ill.), cert. denied, 105 S. ct. 2345 (1985); Clergy and Laity Concerned v. Chicago Bd. of Educ., 586 F. Supp. 1408 (N.D. Ill. 1984); R.R. Maintenance Laborers' v. Am. R.R. Const. Co., 96 F.R.D. 433 (N.D. Ill. 1983); Chandler Leasing Corp. v. UCC, Inc., 91 F.R.D. 81 (N.D. Ill. 1981). Because the defendant has not indicated which of the six grounds for relief he wishes **[*12]** to invoke, this Court is forced to evaluate each of those subsections to determine whether any one of them applies.

First, we note that there is no indication that subsection 1, 2 or subsection 5 would apply in this case. The defendant does not assert that any sort of mistake has been made, nor do his arguments indicate that his default was due to excusable neglect on his or his counsel's part.

Get a Document - by Citation - 1990 U.S. Dist. LEXIS 3852    Page 8 of 13

Case 3:13-cv-00772-JCH  Document 262    Filed 04/09/13  Page 51 of 94

Indeed, his primary assertion with regard to his actions is that he was diligently pursuing this case and trying to comply with his obligations. Defendant portrays himself as a somewhat confused innocent who was abandoned by several attorneys and thus was unable to comply with discovery. However, there is no assertion that defendant's default was due to neglect.

Similarly, the defendant has made no argument which could conceivably be construed as asserting that defendant has recently come upon relevant evidence. Every fact defendant presents in his attempt to undermine the default judgment was not only available at the time the underlying motion was filed but most were actually argued in defendant's response to plaintiff's motion for default judgment. Finally, subsection 5 does not apply because **[*13]** the judgment has not been released, satisfied, or discharged.

A. Rule 60(b)(3)

Defendant's brief indicates that he could be asserting misrepresentation by plaintiff as a basis for relief under Rule 60(b)(3). First, we note that while defendant makes a conclusory assertion that plaintiff has "unclean hands," he fails to cite any conduct on the part of plaintiff to support this allegation. Thus, we will not delve further into this accusation.

Defendant does, however, articulate a theory that warrants discussion. Defendant claims that the plaintiff, in its initial motion for default judgment, misrepresented the facts surrounding the parties' agreement pursuant to the Local Rule 12(D) conference. Specifically, defendant contends that his counsel at the time of the conference did not enter into an agreement as specific as plaintiff indicates and that a letter plaintiff sent to defense counsel, purportedly setting out the terms of the agreement, was inaccurate and self-serving. Further, defendant argues that it was not his or his counsel's understanding that any new counsel would be bound by this agreement, whatever its terms. Defendant's contentions are without merit.

The transcript of **[*14]** the parties' August 21, 1989 status hearing, in which counsel for defendant, counsel for plaintiff and this Court participated, reveals that defendant's latter contention is a blatant misstatement of the facts. The discussion on pages 34 and 35 of that status hearing transcript indicate that plaintiff's attorney asked specifically about the agreement reached in the Rule 12(D) conference. The discussion occurred as follows:

Mr. Mandell: Well, I would say, though, that counsel and I did have a Rule -- local Rule 12(D) conference regarding the discovery disputes and I guess I just want to say for the record that those agreements are set forth in writing and I wouldn't want to be forced to haggle with another lawyer.

Court: No. If those agreements are in place -- we are not going to re-invent the wheel because new counsel might come in the case. Whatever agreements have been reached will be honored by either the party or succeeding counsel. We are not going to re-do that. So, do not worry about that, okay?

This colloquy makes exceedingly clear that the Court intended that defendant and/or his new counsel would be bound by the agreement reached in the 12(D) conference. No one in **[*15]** court that day could have reasonably misperceived the meaning of the Court's statement.

Further, we find unpersuasive defendant's summary of a purported telephone conversation between Mr. Rothenberg and defendant's former counsel where former counsel purportedly indicated that she did not understand that defendant would be bound by the 12(D) agreement. First, defendant's summary of a purported phone conversation is hardly reliable evidence. Defendant has submitted no affidavit or deposition to support that this conversation ever occurred, much less whether former counsel relayed the information defendant insists that she did. Moreover, given former counsel's presence at the August 21, 1989 status hearing, it is unreasonable to infer that her understanding could have been anything other than that the agreement was to be binding on defendant and his future counsel. Thus, any contention on

former counsel's part that there was no such understanding is frivolous.

Additionally, defendant's contention that the terms of the agreement were in dispute and accordingly, that plaintiff's letter to defense counsel which allegedly documented the agreement was self-serving and inaccurate is without **[\*16]** merit. First, defendant has presented no credible documentation to support the contention that former counsel actually believed this to be the case. As noted previously, the summary of the telephone conversation between former counsel and Mr. Rothenberg is unconvincing for the several reasons discussed.

Moreover, the excerpt of a March status hearing which defendant quotes in his reply does not support defendant's assertion. This excerpt does not suggest that former defense counsel disagreed with the agreement as set forth in plaintiff's letter. In this excerpt, former counsel merely informed the court that she had not yet taken any action on the discovery request. Indeed, defendant's attempt to turn former defense counsel's statement that: "[a]s for my having done any written discovery addressed to them, I have not done that yet . . .," into an argument that the parties did not even address written discovery in the 12(D) conference defies logic and misrepresents counsel's statement. Further, if former defense counsel actually disagreed with plaintiff's characterization of the agreement as set forth in the letter, defense counsel should have and would have indicated that inconsistency **[\*17]** when the Court directed that the agreement would be binding on any future counsel defendant might hire. At the August 21 status hearing, the written agreement was discussed and it is clear that this agreement was what the Court intended and former counsel must have understood would bind defendant and future counsel.

B. Rule 60(b)(4)

*HN6*Subsection 4 of Rule 60(b) provides that relief may be granted where the judgment is void. Defendant argues that diversity jurisdiction does not exist in this case and additionally, that this objection to the Court's subject matter jurisdiction can be raised at any time. Accordingly, we assume that defendant intends to attack this judgment collaterally through the device of Rule 60(b). Defendant's contention fails both due to the procedural posture in which he raises this objection as well as on the merits.

In Chicot County Dist. v. Bank., 308 U.S. 371 (1940), the Supreme Court held that *HN7*a federal district court's erroneous exercise of subject matter jurisdiction is not subject to collateral attack. "The court has the authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, while open to direct review, is res **[\*18]** judicata in a collateral action." Chicot, 308 U.S. at 377. It is irrelevant that the court did not explicitly rule on the issue of its subject matter jurisdiction; if the objection could have been raised, res judicata applies to bar a collateral attack. See Insurance Corp. v. Compagnie Des Bauxites, 456 U.S. 694, 702 n.9 (1982) (party who had opportunity to litigate question of subject matter jurisdiction may not raise issue in collateral attack).

*HN8*The exception to the rule prohibiting collateral attack on a court's subject matter jurisdiction involves situations where a district court "usurps" jurisdiction as opposed to erroneously determining that it has jurisdiction. See Nemaizer v. Baker, 793 F.2d 58 (2d Cir. 1986)."[A] court will be deemed to have plainly usurped jurisdiction only when there is a 'total want of jurisdiction' and no arguable basis on which it could have rested a finding that it had jurisdiction." Nemaizer, 793 F.2d at 65 (citing Lubben v. Selective Service System Local Board No. 27, 453 F.2d 645 (1st Cir. 1972)). Where there is a reasonable basis for jurisdiction, there can be no collateral attack. Nemaizer, 793 F.2d at 65 (finding reasonable **[\*19]** basis for jurisdiction where court determined that federal law preempted state law and based jurisdiction on this federal question).

Thus, in this case, even if defendant were to establish that jurisdiction was improper, defendant could not collaterally attack jurisdiction because the Court did not "plainly usurp" jurisdiction. Jurisdiction in this case is based on the diversity of citizenship between the parties. 28 U.S.C.

Get a Document by Citation 1990 U.S. Dist. LEXIS 3852    Filed 04/09/13    Page 53 of 94    Page 10 of 13

Case 3:12-cv-00722-JCH    Document 201    Filed 04/09/13    Page 53 of 94

1332 (1988 & Supp. 1989). Plaintiff is a citizen of New York, the place of its incorporation and its principal place of business. Defendant is a citizen of Illinois. Defendant now argues that plaintiff actually has a dual citizenship and thus diversity is destroyed. However, even if this were found to be this case, it does not make the court's assertion of jurisdiction a "plain usurpation" of power. It is unreasonable to expect the Court, without briefing and argument by the parties, to investigate the potential that plaintiff maintained two principal places of business. This is not a typical situation and a court cannot be expected to make an inquiry into potential dual citizenship in each case to which a corporation is party. This is not the type of error that **[*20]** is so readily apparent that the Court could be deemed to have ignored its implication and usurped jurisdiction. Therefore, we conclude that the apparent diversity of citizenship between the parties to this action provided a reasonable basis for jurisdiction. Similarly, because, as we will discuss below, defendant's second jurisdictional argument is directly contrary to the plain meaning of the diversity statute, jurisdiction was plainly not usurped nor was it in error based on this second contention. Accordingly, defendant is not entitled to collaterally attack the Court's subject matter jurisdiction in a 60(b) motion. See, e.g., Nemaizer, 793 F.2d at 65 (Rule 60(b) is method of collateral attack).

While we need not address the merits of defendant's claim under this prong, we chose to do so to point out that this Court's decision to assert jurisdiction was not only reasonable, but correct. Defendant first argues that because plaintiff actually maintains its principal place of business in Illinois, it is an Illinois resident and therefore, diversity never existed in this case. To support his argument, defendant points to the fact that plaintiff maintains a regional headquarters **[*21]** in Illinois, employs sales agents in Illinois, and that all business conducted with the defendant took place in Illinois and through an Illinois agent.

Plaintiff has provided the affidavit of its corporation's Assistant Secretary, Pauline Wittenberg, which competently establishes that New York is plaintiff's principal place of business. As set forth in the affidavit, New York is where the corporate policy is set. This is also where its executive officers exercise direction and control over company affairs. Moreover, the corporation's home office is in New York and therefore its primary corporate functions are performed there. See Kanzelberger v. Kanzelberger, 782 F.2d 774, 777 (7th Cir. 1986) (Seventh Circuit applies nerve center test; nerve center is place where officers worked where corporate records kept, where orders received and filled). Not only are defendant's contentions undocumented, but even had defendant provided support, the fact that an insurance company maintains operations in this state is not persuasive evidence that this state serves as the company's principal place of business. Insurance companies typically maintain offices wherever customers can be conveniently **[*22]** serviced. Thus, the fact that defendant's policy was serviced entirely in Illinois also has no bearing on this inquiry. Indeed, defendant apparently has confused the concepts of a corporation's principal place of business for purposes of subject matter jurisdiction with "doing business" for purposes of asserting personal jurisdiction under Illinois law.

Defendant's second jurisdictional challenge has no basis in logic or the language of the statute on which he relies. Defendant raises the exception to diversity jurisdiction under 28 U.S.C. § 1332(c) and contends that this case falls within its parameters. **HN9** Where a party brings an action for damages directly against the insurer of a policy for liability insurance, the "direct action" provision of Section 1332 dictates that an insurer is deemed a resident of the state in which the insured resides as well as a resident of its state of incorporation and its principal place of business. 28 U.S.C. § 1332(c). Defendant thus claims that plaintiff is a resident of Illinois by virtue of the Illinois residency of defendant's deceased wife, the insured in this case. Defendant apparently has failed to carefully read the statute and consequently **[*23]** his argument has no basis in its language.

First, this action does not involve a policy of liability insurance and therefore does not fall within the statute's parameters. Additionally, this is not a direct action against an insurer but instead is an action by an insurer against a beneficiary. **HN10** The "direct action" provision applies only where the insurer is the defendant in the action. See Northbrook National Insurance Company

v. Brewer, 110 S. Ct. 297 (1989); see also Dairyland Ins. Co. v. Makover, 654 F.2d 1120 (5th Cir. 1981) (dealing specifically with a declaratory judgment action by the insurer). Accordingly, defendant's reliance on this provision is misplaced.

Defendant sets forth a third and final argument relating to the jurisdiction of this court. Defendant contends that this action falls into a rarely used common law exception to the federal courts' diversity jurisdiction. The exception, an admittedly narrow one, strips a federal court of subject matter jurisdiction where the action is one of "pure probate" or directly interferes with state probate proceedings. See Rice v. Rice Foundation, 610 F.2d 471 (7th Cir. 1979).

In Rice, the Seventh Circuit set forth **[*24]** the framework for analyzing whether an action in federal court is improper under the probate exception. Initially, when a matter is one of "pure probate," the court must decline jurisdiction. "Pure probate" actions are those which directly involve the probate of a will or those actions in which the federal court assumes control over property which is in the custody of the state court. See, e.g., Georges v. Glick, 856 F.2d 971 (7th Cir.), cert. denied, 109 S. Ct. 1570 (1988). Where the action is not one involving "pure probate," the Seventh Circuit has indicated that the inquiry is whether resolution of the suit will result in interference with the state probate proceedings or the state's assumption of general probate jurisdiction. Georges, 856 F.2d at 974.

In this case, there is no ongoing probate proceeding with which this Court might potentially interfere. Indeed, no estate has been opened for Carol Cammon, presumably because there are no estate assets. Thus, the rationale for applying the probate exception is not applicable in this case. Furthermore, even if there was a probate estate, we find that this action would not interfere with the administration of that **[*25]** estate for several reasons. First, this action is only remotely connected to the hypothetical probate estate. This complaint charged that the policy at issue was void from its inception. Plaintiff's theory is that defendant fraudulently induced the deceased's procurement of the policy. Thus, if plaintiff had made its case, the contract would have been declared null and void and the plaintiff would have been relieved of all obligations under the contract. The proceeds would not have poured into the probate estate. Thus, the outcome of this suit has no effect on the probate estate or any potential probate assets. In this suit, either defendant would have collected as the beneficiary, or plaintiff would have been relieved of all liability under the policy.

Furthermore, this is a contract action and not an action involving the distribution of probate assets. If defendant established his entitlement to the proceeds of this policy he was entitled to them via an intervivos transfer and not via decedent's will or even through intestate succession. Thus, this action is not the type of proceeding which could potentially impair a probate court's activities. It is inconceivable that this narrowly **[*26]** construed common law exception to a federal court's statutorily provided jurisdiction was designed to oust the court of its jurisdiction every time an action in contract or tort could potentially pour assets into an estate.

C. Rule 60(b)(6)

Finally, it is possible that defendant intends to invoke subsection 6, the "catch-all" provision of Rule 60(b). **HN11** This subsection provides that the court may consider any other reason justifying relief under this rule. Relief under this subsection is given in situations where a judgment was obtained by the improper conduct of the party in whose favor it was rendered or where it resulted from the excusable default of the party against whom judgment was entered. Toronto-Dominion Bank v. Central Nat'l Bank & Trust Co., 753 F.2d 66 (8th Cir. 1985); see also 11 Wright & Miller, Federal Practice and Procedure: Civil § 2864 (1973). However, where an unfavorable judgment results from a deliberate choice of trial strategy, relief under this subsection is inappropriate. See Ackerman v. United States, 340 U.S. 193, 198 (1950). Similarly, incompetence or gross negligence on the part of counsel coupled with innocence on the part of the party is insufficient. **[*27]** See Kagan v. Caterpillar Tractor Co., 795 F.2d 601 (7th Cir. 1986); Clarke v. Burke, 570 F.2d 824 (8th Cir. 1978); Kostenbauder v. Secretary of Health. Education and Welfare, 71 F.R.D. 449 (M.D. Penn. 1976), aff'd, 556 F.2d 565 (3d Cir.

1977).

While defendant has made statements indicating that he believes plaintiff is guilty of misconduct, we have previously discussed these accusations and found that plaintiff is not guilty of any misrepresentation in this case. Accordingly, that ground for relief under the catch-all provision is exhausted.

Further, we do not find any special circumstances that would justify granting the relief defendant seeks. Defendant presents a 10 page brief coupled with a 21 page affidavit signed jointly by himself and Mr. Rothenberg, both of which portray defendant as a confused innocent who was abandoned by several lawyers and thus unable to properly defend himself in this matter. Despite the fact that this characterization of defendant is contrary to what this Court necessarily found to be the case in its decision to award the plaintiff a default judgment, it is insufficient to entitle defendant to relief under this subsection of 60(b). Even **[*28]** construing defendant's actions to his benefit, his unjustified violation of this Court's discovery orders is hardly the type of "extraordinary circumstance" that would compel this Court, in its discretion to see that justice is done, to award relief. See Griffin v. Swim-Tech., 722 F.2d 677 (11th Cir. 1984) (repeated unjustified violations of court's discovery orders did not present circumstances sufficient to justify relief from default judgment). Indeed, having previously found defendant's actions to be willful, such relief is even less appropriate.

Defendant has failed to establish "good cause" for vacating this judgment. Accordingly, because we have failed to find "good cause," we need not address timeliness or the existence of a meritorious defense, the second and third requirements of Rule 60(b). Defendant's motion to vacate this Court's judgment of November 7, 1989, is denied.

Consequently, this Court's ruling that defendant's motion to dismiss and Mr. Rothenberg's motion for leave to file an appearance were moot when submitted to the Court was proper. The basis on which defendant would have us reconsider these motions, that the Court's default judgment was improper, is **[*29]** without merit. Thus, the Court made no mistake in declaring these motions moot. To defendant's contention that its jurisdictional argument should have been considered even after judgment was entered and that this was a mistake of law on the part of the Court, we have two responses. First, as discussed previously, unless improper jurisdiction is a blatant usurpation of power, the lack of jurisdiction cannot be raised on collateral attack. Thus, it can only be considered on appeal. Second, the merits of defendant's jurisdictional arguments actually have been addressed under the guise of Rule 60(b)(4)'s void judgment provision. As the discussion 'reveals, defendant's challenges to jurisdiction are groundless.

### III. Appeal

Finally, we recognize that there has been some confusion surrounding the status of this case for purposes of appeal. The Seventh Circuit rejected defendant's petition on two grounds. First, the court pointed out that a notice of appeal filed before the entry of an order disposing of a timely Rule 59 motion is premature and ineffective. Acosta v. Louisiana Dept. of Health & Human Resources, 106 S. Ct 2876 (1986). Second, the court stated that although this Court's **[*30]** order inferentially contemplated the entry of a declaratory judgment, no declaratory judgment was entered. Because we did not analyze defendant's arguments under Rule 59, we need not address the effect of such a motion on the defendant's ability to appeal. However, we will address the failure to enter final judgment.

This Court's order was not a "final decision" under 28 U.S.C. § 1291. As the Seventh Circuit noted, the order "contemplated" a final decision but did not properly set forth the disposition. *HN12* A judgment must be set forth on a separate sheet of paper, Azeez v. Fairman, 795 F.2d 1296, 1297 (7th Cir. 1986), and "must describe the relief to which the prevailing is entitled and knot simply record that a motion has been granted." American Interinsurance Exchange v. Occidental Fire & Casualty Co., 835 F.2d 156, 158-60 (7th Cir. 1987). We failed to follow this

procedure thereby undermining defendant's ability to appeal. Therefore, attached to this memorandum order is a separate sheet indicating that a final decision has been rendered.

Date: April 6, 1990

Service: **Get by LEXSEE®**
Citation: **1990 U.S. DIST LEXIS 3852**
View: Full
Date/Time: Monday, April 8, 2013 - 11:57 AM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation Information available
*.Click on any *Shepard's* signal to *Shepardize®* that case.

In

About LexisNexis | Privacy Policy | Terms & Conditions | Contact Us
Copyright © 2013 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Get a Document by Citation 2010 U.S. Dist. LEXIS 81173    Page 1 of 8

Case 3:10-cv-00412-JCH   Document 201   Filed 04/09/13   Page 58 of 94

Help | Sign Out

| Search | Get a Document | *Shepard's®* | More | | Alerts |

**FOCUS™** Terms                          Advanced...  **Get a Document**              View Tutorial

Service: **Get by LEXSEE®**
Citation: **2010 U.S. DIST LEXIS 81173**

*2010 U.S. Dist. LEXIS 81173, ***

⬆ View Available Briefs and Other Documents Related to this Case

JEFFREY PATRICK and JEAN PATRICK, Plaintiffs, v. PORTER-CABLE CORP. and HOME DEPOT
USA, INC., Defendants.

Civil No. 3:10cv131 (MRK)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2010 U.S. Dist. LEXIS 81173

April 1, 2010, Decided
April 1, 2010, Filed

## CASE SUMMARY

**PROCEDURAL POSTURE:** In a product liability case, plaintiff individuals sued defendant nail
gun maker and retailer in state court. The maker purportedly removed the case to federal
court. The individuals moved to remand, arguing that the maker failed to satisfy the rule of
unanimity. The maker argued that the retailer was merely a nominal party, and therefore the
rule of unanimity did not apply or that the failure to join should be excused.

**OVERVIEW:** There was no dispute that at the time of removal, the maker did not have the
retailer's unambiguous written consent to removal, and that the notice of removal was filed
on the last day that it had to remove the case from state court. Therefore, it failed to comply
with the rule of unanimity in this case. Although the maker represented that the retailer
consented to removal, the retailer did not file the necessary written consent until almost two
weeks after the deadline for removal. The maker asked the court to excuse that failure, but
it could not do so. Courts had very little discretion, if any, to forgive a failure to comply with
the rule of unanimity. The maker's argument that the retailer was a nominal party rested on
the fact that the maker had agreed to indemnify the retailer and that its indemnification
agreement was insured. The retailer was not a nominal party. Defendants could be held
jointly and severally liable for the individual's injuries under Conn. Gen. Stat. § 52-572m et
seq. Regardless of any indemnification agreement or insurance that the maker provided the
retailer, the individuals could obtain a judgment against the retailer and seek to execute that
judgment.

**OUTCOME:** The motion to remand was granted.

**CORE TERMS:** removal, nominal party, unanimity, quotation marks, citation omitted, notice,

indemnified, nominal, seller, written consent, cause of action, final judgment, indemnity agreement, insured, party asserting, procedural posture, civil action, initial pleading, filing requirement, indemnification, jurisdictional, manufacturer, unambiguous, non-joining, rigorously, indemnify, deadline, removing, recited, forgive

## LEXISNEXIS® HEADNOTES                                          ⊟ Hide

Civil Procedure > Removal > Elements > Removability 🔖

*HN1*✚Pursuant to 28 U.S.C.S. § 1441(a), any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.  More Like This Headnote

Civil Procedure > Removal > Postremoval Remands > General Overview 🔖

*HN2*✚A party opposing removal may file a motion for remand to state court. 28 U.S.C.S. § 1447(c).  More Like This Headnote

Civil Procedure > Removal > Proceedings > General Overview 🔖

Evidence > Procedural Considerations > Burdens of Proof > Allocation 🔖

*HN3*✚The burden is on the party seeking removal to establish its right to a federal forum. At all times the party asserting jurisdiction bears the burden of proof that jurisdictional and procedural requirements have been met.  More Like This Headnote

Civil Procedure > Removal > General Overview 🔖

Governments > Legislation > Interpretation 🔖

*HN4*✚The United States Court of Appeals for the Second Circuit has instructed district courts to construe the removal statute narrowly, resolving any doubts against removability.  More Like This Headnote

Civil Procedure > Removal > Proceedings > Time Limitations 🔖

Governments > Legislation > Statutes of Limitations > Time Limitations 🔖

*HN5*✚28 U.S.C.S. § 1446(b) establishes a deadline for a defendant to remove an action from state to federal court. The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter. 28 U.S.C.S. § 1446(b). While the statutory time limit is mandatory, it is merely a formal and modal requirement and is not jurisdictional. Nevertheless, absent a finding of waiver or estoppel, federal courts rigorously enforce the statute's 30-day filing requirement.  More Like This Headnote

Civil Procedure > Removal > Proceedings > Time Limitations 🔖

Civil Procedure > Removal > Proceedings > Unanimity 🔖

Governments > Legislation > Interpretation

*HN6* The rule of unanimity requires all defendants to consent to removal. While courts generally do not require all defendants to sign the removal petition itself, most courts have required some form of unambiguous written evidence of consent to the court in timely fashion. It is insufficient for a defendant who has not signed the removal petition to merely advise the removing defendant that it consents to removal and that the removing defendant may represent such consent to the court on its behalf. Failure of any defendant to provide its written consent within the applicable 30-day period renders the petition for removal untimely. To comply with the rule of unanimity, the consent of all defendants to removal must be clearly manifested within the 30-day period specified by 28 U.S.C.S. § 1446. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Removal > Proceedings > Unanimity

Civil Procedure > Judicial Officers > Judges > Discretion

*HN7* In the context of removal, courts have very little discretion, if any, to forgive a failure to comply with the rule of unanimity. Federal courts rigorously enforce 28 U.S.C.S. § 1446's 30-day filing requirement. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Removal > Proceedings > Unanimity

*HN8* The unanimity rule is subject to three pivotal exceptions. A party asserting proper removal may raise an exception to the unanimity rule when: (1) the non-joining defendants have not been served with service of process at the time the removal petition is filed, (2) the non-joining defendants are merely nominal or formal parties, or (3) the removed claim is a separate and independent claim as defined by 28 U.S.C.S. § 1441(c). More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Removal > Proceedings > Unanimity

Evidence > Procedural Considerations > Burdens of Proof > Allocation

*HN9* The removing party bears the burden of showing that another party is a nominal party. More Like This Headnote

Civil Procedure > Removal > Proceedings > Unanimity

*HN10* In the context of the rule of unanimity in removal cases, the determination of whether a party is nominal must be made on a case-by-case basis based on practical considerations and not mere labels. More Like This Headnote

Civil Procedure > Removal > Proceedings > Unanimity

*HN11* In the context of the rule of unanimity in removal cases, the mere fact that a defendant is indemnified by another defendant does not transform the indemnified defendant into a nominal party. More Like This Headnote | *Shepardize:* Restrict By Headnote

## ⚓Available Briefs and Other Documents Related to this Case:

U.S. District Court Motion(s)

U.S. District Court Pleading(s)

**COUNSEL:  [*1]** For Jeffrey Patrick, Jean Patrick, Plaintiffs: Eric P. Smith ▾,
Joel Thomas Faxon ▾✍, LEAD ATTORNEYS, Stratton Faxon, New Haven, CT.

For Porter-Cable Corp, Defendant: Christopher M. Vossler ▾✍, John J. Bogdanski ▾✍,
Kevin W. Hadfield ▾, LEAD ATTORNEYS, Howd & Ludorf, Hartford, CT.

For Home Depot USA Inc, Defendant: Christopher M. Vossler ▾✍, John J. Bogdanski ▾✍,
Kevin W. Hadfield ▾, LEAD ATTORNEYS, Howd & Ludorf, Hartford, CT; James A. Maha, LEAD
ATTORNEY, Ryan Ryan Deluca LLP, Stamford, CT.

**JUDGES:** Mark R. Kravitz ▾, United States District Judge.

**OPINION BY:** Mark R. Kravitz ▾

 **OPINION**


**RULING AND ORDER**

A Notice of Removal [doc. #1] in the above-captioned case was filed by Defendant
Porter-Cable Corporation ▾("Porter-Cable") [1] on January 27, 2010, purporting to remove the
Plaintiffs' action from the Superior Court of the State of Connecticut, Judicial District of New
Haven, to the United States District Court for the District of Connecticut. Shortly thereafter, on
February 4, 2010, Plaintiffs filed a Motion to Remand to State Court [doc. # 15] on the grounds
that Porter-Cable had failed to satisfy the "rule of unanimity," which requires all Defendants to
join in removal. *See, e.g., Edelman v. Page,* 535 F. Supp. 2d 290, 292-93 (D. Conn. 2008).
 **[*2]** Porter-Cable opposes the motion to remand on the grounds that its co-Defendant, Home
Depot U.S.A., Inc. ("Home Depot"), is merely a nominal party, and therefore the rule of
unanimity does not apply. *See* Mem. in Opp. to Pls.' Mot. to Remand [doc. # 23] ("Def.'s Opp.")
at 4-8. Porter-Cable also argues that even if Home Depot is not a nominal party, its failure to
join in removal should be excused. *See id.* at 8. Porter-Cable's argument require the Court to
consider when a party is a nominal party for purposes of removal. For the reasons that follow,
the Court rejects Porter-Cable's arguments and GRANTS Plaintiffs' Motion to Remand to State
Court [doc. # 15].

**FOOTNOTES**

1 Porter-Cable merged with Black & Decker (U.S.) Inc. ("Black & Decker") in May 2005, and
Black & Decker is the successor-in-interest of Porter-Cable. For ease of reference, the Court
will generally refer to both Porter-Cable and Black & Decker as "Porter-Cable" throughout
this opinion, except where necessary to distinguish between the two.


The Court assumes the parties' familiarity with the facts and procedural posture of this case,
and discusses here only those facts necessary to resolve the pending motion. Plaintiffs brought
this **[*3]** product liability action in state court, alleging that Plaintiff Jeffrey Patrick was injured
by a defective nail gun manufactured by Porter-Cable and sold by Home Depot. The case was
filed on December 24, 2009, and it is undisputed that process was served on both Defendants
on December 28, 2009. Pursuant to a Supplier Buying Agreement (SBA) between Porter-Cable
and Home Depot, Home Depot tendered its defense in this matter to Porter-Cable. *See* Def.'s
Opp. [doc. # 23] Ex. 1, Att. A (letter from Home Depot to Porter-Cable dated January 13,
2010); *id.* Att. B (letter from Porter-Cable to Home Depot dated January 27, 2010). The SBA
also apparently requires Porter-Cable to indemnify Home Depot, and Home Depot is a named
insured under Porter-Cables's general liability insurance coverage. *See id.* Att. A; *id.* Att. B.

Porter-Cable filed its Notice of Removal [doc. # 1] on January 27, 2010 — precisely 30 days after it was served. In its Compliance With Standing Order in Removed Cases [doc. # 6], also filed on January 27, Porter-Cable represented that "[c]ounsel for Home Depot U.S.A., Inc. has not joined in removal as of this, but has represented to counsel for Black & Decker (U.S.) Inc., Successor **[*4]** to Porter-Cable Corporation ˅that Home Depot U.S.A., Inc. has no objection to the Notice of Removal." *Id.* ¶ 5. Finally, on February 8, 2010, only after Plaintiffs' motion to remand was filed, Home Depot filed a Notice of Consent to Removal [doc. # 19].

*HN1*✚Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." *HN2*✚A party opposing removal may file a motion for remand to state court, *see* 28 U.S.C. § 1447(c), and *HN3*✚the burden is on the party seeking removal to "establish its right to a federal forum," *see Heller v. New York City Health and Hosps. Corp.*, No. 09 Civ 6193 (LTS)(GWG), 2010 U.S. Dist. LEXIS 9828, 2010 WL 481336, at *1 (S.D.N.Y. Feb. 1, 2010) (internal quotation marks and citation omitted); *see also Burr v. Toyota Motor Credit Co.*, 478 F. Supp. 2d 432, 436 (S.D.N.Y. 2006) ("At all times the party asserting jurisdiction bears the burden of proof that jurisdictional and procedural requirements have been met."). *HN4*✚The Second Circuit has instructed **[*5]** district courts to "construe the removal statute narrowly, resolving any doubts against removability." *Somlyo v. J. Lu-Rob Enterprises, Inc.*, 932 F.2d 1043, 1046 (2d Cir. 1991).

Of particular relevance to this case, *HN5*✚28 U.S.C. § 1446(b) establishes a deadline for a defendant to remove an action from state to federal court:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b). "While the statutory time limit is mandatory, it is merely a formal and modal requirement and is not jurisdictional. . . . Nevertheless, absent a finding of waiver or estoppel, federal courts rigorously enforce the statute's thirty-day filing requirement." *Somlyo*, 932 F.2d at 1046 (internal quotation marks and citation omitted); *see also Edelman*, 535 F. Supp. 2d at 292.

*HN6*✚The rule of **[*6]** unanimity requires all defendants to consent to removal. *See Bradford v. Harding*, 284 F.2d 307, 309 (2d Cir. 1960); *Heller*, 2010 U.S. Dist. LEXIS 9828, 2010 WL 481336, at *2. "While courts generally do not require all defendants to sign the removal petition itself, most courts have required some form of *unambiguous written evidence* of consent to the court in timely fashion." *Id.* (internal quotation marks and citation omitted) (emphasis added). "It is insufficient for a defendant who has not signed the removal petition to merely advise the removing defendant that it consents to removal and that the removing defendant may represent such consent to the Court on its behalf." *Edelman*, 535 F. Supp. 2d at 292. "Failure of any defendant to provide its written consent within the applicable thirty-day period renders the petition for removal untimely." *Burr*, 478 F. Supp. 2d at 437; *see also Prue v. Eagleston*, No. 3:07CV1848 (AWT), 2008 U.S. Dist. LEXIS 18497, 2008 WL 687359, at *1 (D. Conn. Mar. 12, 2008) ("To comply with the rule of unanimity, the consent of all defendants to removal must be clearly manifested within the thirty-day period specified by 28 U.S.C. § 1446.").

Based on the facts recited above, there is no dispute that Porter-Cable did not, **[*7]** at the time it removed this case, have Home Depot's unambiguous written consent to removal, and

that Porter Cable's Notice of Removal was filed on the last day that it had to remove this case from state court. Therefore, Defendants failed to comply with the rule of unanimity in this case. Although Porter- Cable represented that Home Depot consented to removal, Home Depot did not file the necessary written consent until February 8, 2010 — almost two weeks after the deadline for removal. Porter- Cable asks the Court to excuse this failure, but it cannot do so. *HN7* Courts have very little discretion — if any — to forgive a failure to comply with the rule of unanimity. *See, e.g.*, 2008 U.S. Dist. LEXIS 18497, [WL] at *2; *Edelman*, 535 F. Supp. 2d at 295; *Snakepit Automotive, Inc. v. Superperformance Int'l, LLC*, 489 F. Supp. 2d 196, 201 (E.D.N.Y. 2007). As the Second Circuit has explained, "federal courts rigorously enforce the statute's thirty-day filing requirement." *Somlyo*, 932 F.2d at 1046. Therefore, unless Home Depot is subject to an exception from the rule of unanimity, the Court cannot forgive Porter-Cable's failure to obtain Home Depot's consent as Porter-Cable urges.

*HN8* "The unanimity rule is subject to three pivotal **[*8]** exceptions." *Snakepit Automotive*, 489 F. Supp. 2d at 201 (internal quotation marks and citation omitted).

> [A] party asserting proper removal may raise an exception to the unanimity rule when: (1) the non-joining defendants have not been served with service of process at the time the removal petition is filed; (2) the non-joining defendants are merely nominal or formal parties; [or] (3) the removed claim is a separate and independent claim as defined by 28 U.S.C. § 1441(c)."

*Id.* at 201-02 (internal quotation marks and citation omitted). Porter-Cable's opposition to Plaintiffs' motion to remand invokes the second exception in that it argues that Home Depot is a nominal party, and thus is excepted from the rule of unanimity. *HN9* Porter-Cable bears the burden of showing that Home Depot is a nominal party. *See, e.g., Heller*, 2010 U.S. Dist. LEXIS 9828, 2010 WL 481336, at *3. Porter-Cable's argument that Home Depot is a nominal party rests on the fact that Porter-Cable has agreed to indemnify Home Depot and that its indemnification agreement is insured.

Courts in this and other circuits have offered numerous and varied explanations of when a party should be considered a "nominal" party. For example, a nominal party has been **[*9]** described as one: who "has little or no interest in the outcome of the litigation and no cause of action or claim for relief is or could be stated against it," *Heller*, 2010 U.S. Dist. LEXIS 9828, 2010 WL 481336, at *3 (internal quotation marks and citation omitted); who "based on the substantive law of the state, [has] no cause of action [that] could be stated against [it]," *Zerafa v. Montefiore Hosp. Housing Co.*, 403 F. Supp. 2d 320 (S.D.N.Y. 2005); who "hold[s] the naked legal title, with no actual interest or control over the subject-matter of the litigation, when all the equitable interests are therein represented," *Stonybrook Tenants Ass'n, Inc. v. Alpert*, 194 F. Supp. 552, 556-57 (D. Conn. 1961) (internal quotation marks and citation omitted); or who is not "genuinely adverse to the plaintiff, *Creed v. Virginia*, 596 F. Supp. 2d 930, 935 (E.D. Va. 2009).

Similarly, other courts have described a nominal party as one for whom "there is no reasonable basis for predicting that it will be held liable," *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 369 (7th Cir. 1993); without whom "the Court **[*10]** can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to plaintiffs," *id.* at 559; or who is a mere depositary or stakeholder, *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen and Assistants' Local 349*, 427 F.2d 325 (5th Cir. 1970). No matter which definition is used, *HN10* the determination of whether a party is nominal must be made on a case-by-case basis based on practical considerations and not mere lables. *See Stonybrook Tenants Ass'n*, 194 F. Supp. at 557; *Tri-Cities Newspapers*, 427 F.2d at 327.

Other courts have found a party to be a nominal party where, for example, there was no plausible cause of action against it, *see Zerafa*, 403 F. Supp. 2d at 327; where the party was not in a position to provide the specific injunctive relief requested by the plaintiff, *see Norman*

*v. Cuomo*, 796 F. Supp. 654, 658 (N.D.N.Y. 1992); where the parties were liquidated corporations without assets or liabilities, *see Stonybrook Tenants Ass'n*, 194 F. Supp. at 553; where the party was a parent corporation "joined solely because of the acts of its subsidiary," *Shaw*, 994 F.2d at 369; where the party had no assets and no connection **[*11]** to the incidents giving rise to plaintiff's claim, *see Mayes v. Moore*, 367 F. Supp. 2d 919, 922 (M.D.N.C. 2005); where the party was an insurance company simply holding funds until the case was decided, *see Miller v. Principal Life Ins. Co.*, 189 F. Supp. 2d 254, 258 (E.D. Pa. 2002); and where the party had already settled with the plaintiff, *see In re Bridgestone/Firestone, Inc.*, 287 F. Supp. 2d 940, 942 (S.D. Ind. 2003). *See generally Blue Mako, Inc. v. Minidis*, 472 F. Supp. 2d 690, 696 (M.D.N.C. 2007) (listing some situations in which a party has been found to be nominal).

Regardless of which definition is used, the Court has little trouble concluding that Home Depot is not a nominal party to this case. Home Depot is unlike any of the parties that courts have described as "nominal" in the cases just recited. As Plaintiffs correctly point out, Defendants could be held jointly and severally liable for Mr. Patrick's injuries. *See* Conn. Gen. Stat. § 52-572m *et seq.* Therefore, regardless of any indemnification agreement or insurance that Porter-Cable provided Home Depot, Plaintiffs could obtain a judgment against Home Depot and seek to execute that judgment, and there is no suggestion **[*12]** that Home Depot could not make good on such a judgment. Admittedly, given the fact that Home Depot is indemnified and insured, it is unlikely that Home Depot would end up paying any judgment out of its own pocket — but it is not unforeseeable. For example, Home Depot may not be indemnified if the jury were to determine that they were the sole proximate cause of Mr. Patrick's injuries. *See* Def.'s Opp. [doc. # 23] Ex. 1, Att. B. Plaintiff might also seek to collect the judgment from Home Depot in the unlikely event that Porter-Cable, or its insurer, became insolvent. Therefore, Home Depot has a clear interest in the outcome of the case, and Plaintiffs would be prejudiced if it were not a party.

The Court also notes that other district courts have concluded that **HN11** the mere fact that a defendant is indemnified by another defendant does not transform the indemnified defendant into a nominal party. *See Bricker v. Ford Motor Co.*, 514 F. Supp. 1236, 1238-39 (S.D. Tex. 1981) ("Even though it has an indemnity agreement with Ford, plaintiffs seek a judgment against Von-Wil, and if successful on the merits, will obtain a final judgment against them upon which execution may issue. Additionally, the **[*13]** Court cannot enter a final judgment in this case only against Ford by virtue of the indemnity agreement. Plaintiffs are entitled, if they prevail, to a judgment against Ford and Von-Wil."); *Thompson v. Conoco Inc.*, No. CIV.A.1:94CV199-D-D, 1994 U.S. Dist. LEXIS 21206, 1994 WL 1890836, at *5 (N.D. Miss. Dec. 13, 1994) ("Friend and Smith have very real and subsisting interest in the subject matter of this action and the claim asserted against them. Even though there is an indemnity agreement with Conoco and Vista, plaintiffs seek a judgment against these two men, and if successful on the merits, will obtain a final judgment against them.").

Porter-Cable points to one case in this district that reached the opposite conclusion. In *Raynor v. Shock Doctor, Inc.*, No. 3:08CV1705 (WWE), 2009 U.S. Dist. LEXIS 10624, 2009 WL 347576 (D. Conn. Feb. 11, 2009), Senior District Judge Warren W. Eginton concluded that the seller of a defective product was a nominal party where, although it could be found liable, it was indemnified by the manufacturer. *See* 2009 U.S. Dist. LEXIS 10624, [WL] at *2. Though the Court has the utmost respect for Judge Eginton, the Court will not follow *Raynor*. The holding in *Raynor* was largely based on the Second Circuit's 1939 decision in *Samson-United Corp. v. Sears, Roebuck & Co.*, 103 F.2d 312 (2d Cir. 1939). **[*14]** However, *Samson-United* involved a patent claim against the seller and the manufacturer of allegedly infringing fans, and the Second Circuit labeled the seller a nominal party only in passing. *See id.* at 313. There was no ruling by the Second Circuit that the seller was a "nominal" party in a formal sense. The facts, claims, and procedural posture of *Samson-United* are so distinct from the case at hand that it is simply inapplicable. Furthermore, the court's holding in *Raynor* is contrary to the conclusions of the overwhelming majority of courts in this and other circuits.

Get a Document by Citation 2010 U.S. Dist. LEXIS 81173

Case 3.07-cv-00712-JCH   Document 201   Filed 04/09/13   Page 65 of 94   Page 8 of 8

In sum, the Court concludes that Home Depot is not a nominal party, and therefore that they were required to indicate their consent to removal unambiguously and in writing. Because they failed to do so within 30 days of being served, removal was not timely. Therefore, Plaintiffs' Motion to Remand to State Court [doc. # 15] is GRANTED. **The Clerk is directed to close this case**.

IT IS SO ORDERED:

/s/

Mark R. Kravitz ▾

United States District Judge

**Dated at New Haven, Connecticut: April 1, 2010**.

Service: **Get by LEXSEE®**
Citation: **2010 U.S. DIST LEXIS 81173**
View: Full
Date/Time: Monday, April 8, 2013 - 11:55 AM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
Q - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
A - Citing Refs. With Analysis Available
i - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

In          About LexisNexis   | Privacy Policy   | Terms & Conditions   | Contact Us
Copyright © 2013 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Get a Document - by Citation - 2009 U.S. Dist. LEXIS 104715    Page 1 of 8

Case 3:07-cv-00412-JCH   Document 201-1   Filed 04/09/13   Page 67 of 94

Help | Sign Out

| Search | Get a Document | *Shepard's®* | More | Alerts |

**FOCUS™** Terms                     Advanced...   **Get a Document**


View Tutorial

Service: **Get by LEXSEE®**
Citation: **2009 U.S. DIST LEXIS 104715**

*2009 U.S. Dist. LEXIS 104715, ***

⬆ View Available Briefs and Other Documents Related to this Case

PETER SKAANING, Plaintiff, vs. THOMAS SORENSEN, individually and as trustee for the
SORENSEN FAMILY LIVING TRUST; THE SORENSEN FAMILY LIVING TRUST; INSPIRATION
HAWAII, INC.; INSPIRATION INTERNATIONAL, LLC; TPS, LLC; HDC PROPERTIES, LLC; and KTS
PROPERTIES, LLC, Defendants.

CV. NO. 09-00364 DAE-KSC

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAII

2009 U.S. Dist. LEXIS 104715

November 10, 2009, Decided
November 10, 2009, Filed

**SUBSEQUENT HISTORY:** Costs and fees proceeding at, Magistrate's recommendation at
Skanning v. Sorensen, 2009 U.S. Dist. LEXIS 124225 (D. Haw., Dec. 10, 2009)

**CORE TERMS:** nominal party, matter jurisdiction, diversity, dissolution, partnership, diversity
jurisdiction, receiver, dissolved, citizenship, nominal, real estate, joined, leave to file,
dissolve, burden of proving, ministerial, accounting, distribute, incurable, partners, facial,
invoke, enjoin, cure, appointment, discharged, resident, declaratory judgment, fiduciary duty,
diversity of citizenship

⬇**Available Briefs and Other Documents Related to this Case:**

U.S. District Court Motion(s)
Miscellaneous Expert Witness Filing(s)

**COUNSEL:** **[*1]** For Peter Skaaning, Plaintiff: Jerry M. Hiatt ✒, LEAD ATTORNEY, The Law
Offices of Jerry M. Hiatt, Kamuela, HI; Lyle M. Ishida ✒, Michael D. Tom ✒, LEAD ATTORNEYS,
David R. Harada-Stone ✒, Tom Petrus & Miller, LLLC, Honolulu, HI. Mahilani E.K. Hiatt, LEAD
ATTORNEY, Kamuela, HI;

For Thomas Sorensen Individually and as trustee for the Sorensen Family Living Trust,
Defendant: Barry A. Sullivan ✒, James J. Bickerton ✒, Nadine Y. Ando ✒, LEAD ATTORNEYS,
Bickerton Lee Dang & Sullivan, Honolulu, HI.

For Sorensen Family Living Trust, KTS Properties, LLC., HDC Properties, LLC, TPS, LLC,
Defendants: James J. Bickerton ✒, Nadine Y. Ando ✒, LEAD ATTORNEYS, Bickerton Lee Dang

& Sullivan, Honolulu, HI.

For Inspiration Hawaii, Inc., Inspiration International, LLC, Defendants: John F. Perkin, LEAD ATTORNEY, Perkin & Faria, Honolulu, HI.

**JUDGES:** David Alan Ezra, United States District Judge.

**OPINION BY:** David Alan Ezra

**OPINION**

*ORDER (1) GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, AND (2) DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT*

On November 9, 2009, the Court heard Defendants' and Plaintiff's Motions. Jerry Hiatt, Esq., Michael Tom, Esq., Mahilani Hiatt, Esq., and David Harada-Stone, **[*2]** Esq., appeared at the hearing on behalf of Plaintiff; James Bickerton, Esq., and John Perkin, Esq., appeared at the hearing on behalf of Defendants. After reviewing the motion and the supporting and opposing memoranda, the Court **GRANTS** Defendants' Motion and **DENIES AS MOOT** Plaintiff's Motion. (Docs. ## 18, 31.)

*BACKGROUND*

This matter involves various disputes between Plaintiff Peter Skaaning ("Plaintiff") and Defendant Thomas Sorensen ("Defendant Sorensen") involving the operation of various companies. The parties are "at an impasse on almost all issues related to the continued operation of all these companies." (Doc. # 33 at 11.)

Defendant Sorensen incorporated Inspiration Hawaii, Inc. ("IHI"), in the State of Nevada in 1997. (Doc. # 8 at 3.) In that same year, Defendant Sorensen opened two locations in Hawaii. (Doc. # 33 at 2.) In 1999, Plaintiff became President of IHI, and in 2001 became a 50% shareholder of the stock in IHI. (*Id.*) IHI apparently entered into a lease agreement with another limited liability company, Honolulu Design Center. (Doc. # 8 at 6.) Defendant Sorensen also allegedly controls the Sorensen Family Living Trust, owns HDC Properties, LLC, and owns KTS Properties, **[*3]** LLC. (*Id.* at 3-4.)

Of particular relevance to the instant motions are two additional companies, Inspiration International, LLC ("IIL"), and TPS, LLC ("TPS"). In 2002, IIL was incorporated in the State of Nevada as a limited liability company, and Plaintiff and Defendant Sorensen each hold a 50% interest in IIL. (*Id.* at 3.) TPS is a Nevada limited liability company, and Plaintiff and Defendant Sorensen each own a 50% interest in TPS. (*Id.* at 3, 10.) TPS was apparently established to receive royalties and income from IHI and another company, INBC, for use of the "Inspiration" brand and business model. (*Id.* at 10.)

In an Amended Complaint filed August 17, 2009, Plaintiff alleges that Plaintiff was "constructively discharged" from his position as President of IHI due to the "continued self dealing of Mr. Sorensen." (*Id.* at 11.) Count I of the Amended Complaint seeks dissolution of IIL, IHI, and TPS, and requests that sale of the companies' assets be used to pay off debts or expenses and net proceeds distributed to Plaintiff and Defendant Sorensen. (*Id.* at 15-16.) Count II seeks appointment of a receiver pending dissolution of these companies. (*Id.* at 16.) Count XI seeks preliminary and permanent **[*4]** injunctive relief related to management of IIL, IHI, and TPS. (*Id.* at 27.) Counts III through X and XII seek declaratory judgment that various agreements are void and unenforceable, that Plaintiff was constructively discharged from IHI, and claim breach of fiduciary duty and covenant of good faith, negligence, unfair and deceptive trade practices, misrepresentation, and accounting.

On August 25, 2009, Defendants Sorensen, the Trust, IHI, IIL, TPS, HDC Properties, and KTS Properties (collectively, "Defendants") filed a motion to dismiss for lack of subject matter jurisdiction, citing Plaintiff's alleged failure to properly prove diversity and an absence of diversity jurisdiction between Plaintiff and Defendants IIL and TPS. (Doc. # 18.) On September 25, 2009, Plaintiff filed its Opposition. (Doc. # 33.) On October 26, 2009 and November 2, 2009, Defendants filed their Replies. [1] (Docs. ## 55, 58.)

**FOOTNOTES**

1 Inspiration International, LLC, and Inspiration Hawaii, Inc. filed a joinder to the Reply filed by Defendant Sorensen, the Trust, TPS, HDC Properties, and KTS Properties through new separate counsel. (Doc. # 55 at 1 n.1.)

Meanwhile, on September 21, 2009, Plaintiff filed a Motion for Leave to **[*5]** File Second Amended Complaint. (Doc. # 31.) Defendants filed an Opposition to Plaintiff's motion on September 30, 2009. (Doc. # 37.) On October 8, 2009, Plaintiff filed a Reply. (Doc. # 44.) In an Order filed October 20, 2009, Magistrate Judge Kevin Chang denied without prejudice Plaintiff's motion for leave to file second amended complaint and motion for appointment of receiver. (Doc. # 52.) Magistrate Judge Chang denied Plaintiff's motion in part because of the unresolved subject matter jurisdiction issue before this Court.

*STANDARD OF REVIEW*

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction. In a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the initial burden of proving that subject matter jurisdiction exists. *Robinson v. United States,* 586 F.3d 683, 2009 U.S. App. LEXIS 23983, 2009 WL 3525634, at *1 (9th Cir. 2009); *Rattlesnake Coal. v. U.S. E.P.A.,* 509 F.3d 1095, 1102 n.1 (9th Cir. 2007). "In considering the jurisdiction questions, it should be remembered that 'it is a fundamental principle that federal courts are courts of limited jurisdiction.'" *Stock West, Inc. v. Confederated Tribes of the Colville Reservation,* 873 F.2d 1221, 1225 (9th Cir. 1989) **[*6]** (quoting *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S. Ct. 2396, 57 L. Ed. 2d 274 (1978)). Upon a motion to dismiss, a party may make a jurisdictional attack that is either facial or factual. *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack occurs when the movant "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* By contrast, a factual attack occurs when the movant "disputes the truth of the allegations, that by themselves, would otherwise invoke federal jurisdiction." *Id.*

In resolving a facial attack on the allegations of the complaint, the court must accept the allegations of the complaint as true. *Mason v. Arizona,* 260 F. Supp. 2d 807, 815 (D. Ariz. 2003); *see also Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1040 n.2 (9th Cir. 2003); *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000). "Unlike a Rule 12(b)(6) motion, however, the court will not reasonably infer allegations sufficient to support federal subject matter jurisdiction because a plaintiff must affirmatively allege such jurisdiction." *Mason,* 260 F. Supp. 2d at 815. When subject matter jurisdiction is challenged in a motion to **[*7]** dismiss, the plaintiff has the burden of proving jurisdiction. *Kingman Reef Atoll Investments, L.L.C. v. United States,* 541 F.3d 1189, 1197 (9th Cir. 2008) (citing *Tosco Corp. v. Cmtys. for a Better Env't,* 236 F.3d 495, 499 (9th Cir. 2001)).

*DISCUSSION*

Subject matter jurisdiction is a threshold matter for federal courts, and this Court may not rule on the merits absent subject matter jurisdiction. *See Morongo Band of Mission Indians v. Cal. State Bd. of Equalization,* 858 F.2d 1376, 1380 (9th Cir. 1988). A district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United

States." 28 U.S.C. § 1331. Alternatively, a district court may also have diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $ 75,000 . . . and is between citizens of different States." *Id.* § 1332(a)(1).

Establishing subject matter jurisdiction pursuant to section 1332 requires complete diversity of citizenship between all plaintiffs and defendants, except in limited circumstances not relevant to this action. *See Lee v. Am. Nat'l Ins. Co.,* 260 F.3d 997, 1005 (9th Cir. 2001); *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir. 2001); **[*8]** *Tosco Corp. v. Cmtys. for a Better Env't,* 236 F.3d 495, 499 (9th Cir. 2001); *Arai v. Tachibana,* 778 F. Supp. 1535, 1538 (D. Haw. 1991). Diversity is determined by the citizenship of the parties as of the filing of the complaint. *Harris v. Bankers Life and Cas. Co.,* 425 F.3d 689, 695-96 (9th Cir. 2005); *Strotek Corp. v. Air Transp. Ass'n of Am.,* 300 F.3d 1129, 1131 (9th Cir. 2002) (citing *Morongo Band of Mission Indians,* 858 F.2d at 1380). As discussed above, the plaintiff has the burden of proving jurisdiction. *Kingman Reef Atoll Investments,* 541 F.3d at 1197.

I. *Defendants' Motion to Dismiss*

Defendants assert that the Court lacks diversity jurisdiction over this action for two independent reasons. First, Defendants argue that Plaintiff has failed to establish diversity of citizenship in the First Amended Complaint. (Mot. at 2.) Plaintiff seeks to cure the failing in its pleadings by filing a Second Amended Complaint that corrects allegations regarding the citizenship of parties. Second, Defendants argue that diversity jurisdiction is defeated due to an "incurable jurisdictional defect": Plaintiff is a member of two named defendant limited liability corporations that are not "nominal" **[*9]** defendants. (*Id.*)

The Court will address the nominal defendant question first, as this alleged absence of actual diversity is a fundamental subject matter jurisdiction question that cannot be cured by a technical amendment to a complaint. *See Morongo Band of Mission Indians,* 858 F.2d at 1380 ("If jurisdiction is lacking at the outset, the district court has 'no power to do anything with the case except dismiss.'") (citation omitted). Defendants argue that Plaintiff has sought relief against and through two limited liability companies of which he is a member, thereby destroying diversity. (Mot. at 10.)

The Ninth Circuit had adopted the principle that "an LLC is a citizen of every state of which its owners/members are citizens." [2] *Johnson v. Columbia Properties Anchorage, LP,* 437 F.3d 894, 899 (9th Cir. 2006). Therefore, because an LLC is a citizen of every state of which its owners or members are a citizen, and because complete diversity is required, if a plaintiff is an owner or member of a defendant LLC, then diversity requirement of section 1332 cannot be satisfied.

**FOOTNOTES**

**2** This is in contrast to the rule for a corporation, which is a citizen only of "(1) the state where its principal place **[*10]** of business is located, and (2) the state in which it is incorporated." *Johnson,* 437 F.3d 894, 899 (9th Cir. 2006).

IIL was incorporated in the State of Nevada as a limited liability company, with Plaintiff holding a 50% interest in IIL. (Am. Compl. at 3.) TPS is a Nevada limited liability company, and Plaintiff owns a 50% interest in TPS. (*Id.* at 3, 10.) Although unclear from the briefings at this point, Plaintiff is either a resident of Hawaii or California. [3] What specific state Plaintiff is a resident (or citizen) of is not the issue, however. No matter in which state Plaintiff claims citizenship, IIL and TPS are also citizens of that state. Based on these uncontroverted facts alone, diversity is not satisfied.

**FOOTNOTES**

**3** In both the original Complaint and the First Amended Complaint, Plaintiff stated that he is a

Get a Document - by Citation - 2009 U.S. Dist. LEXIS 104715    Page 5 of 8

Case 3:07-cv-00712-JCH   Document 201   Filed 04/09/13   Page 71 of 94

"legal resident" of the State of Hawaii and is "transitioning" to the State of California. (Compl. at 2; Am. Compl. at 3.)

It is also an established rule, however, that the presence of a "nominal" party need not destroy diversity jurisdiction. *See Strotek Corp.,* 300 F.3d at 1132; *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.,* 204 F.3d 867, 873 (9th Cir. 2000); *Matchett v. Wold,* 818 F.2d 574, 576 (7th Cir. 1987). **[*11]** Plaintiff relies on this nominal party exception to argue that this Court has subject matter jurisdiction over this action. The Court must therefore address whether these companies, IIL and TPS, are "nominal" parties under the facts of this case.

Plaintiff contends that the substantive claims are all against Defendant Sorensen and the Trust and KTS Properties and that no substantive relief is sought against IIL or TPS. (Opp'n at 21.) IIL and TPS are joined only as nominal parties so that the Court may dissolve them and distribute their assets to their members. (*Id.*)

Defendants argue that because Plaintiff seeks dissolution of IIL and TPS, appointment of a receiver pending dissolution, and injunctive relief related to management of IIL and TPS, those companies cannot be considered nominal parties. (Mot. at 12.)

Plaintiff then asserts that Plaintiff and IIL and TPS are not adversaries in this case but are in fact allied. (Opp'n at 24.) But as Defendants point out, even if this Court were to realign IIL and TPS with Plaintiff, then conceivably diversity is still defeated because Defendant Sorensen's citizenship would be imputed to them because he owns a 50% interest in IIL and TPS. (Reply **[*12]** at 8-9.) The argument is therefore circular and presupposes that the IIL and TPS are not nominal parties.

To ascertain whether a party is a nominal party, the Ninth Circuit has held that a nominal defendant is "a person who 'holds the subject matter of the litigation in a subordinate or possessory capacity and to which there is no dispute.'" *S.E.C. v. Colello,* 139 F.3d 674, 676 (9th Cir. 1998) (quoting *S.E.C. v. Cherif,* 933 F.2d 403, 414 (7th Cir. 1991)). "The paradigmatic nominal defendant is 'a trustee, agent, or depositary . . . [who is] joined purely as a means of facilitating collection.'" *Id.* (quoting *Cherif,* 933 F.2d at 414).

The parties do not cite to and this Court could not locate Ninth Circuit authority directly on point with the facts in this case. The parties submit various cases as persuasive authority. Upon review, the Court concludes that the facts of this case are distinguishable from those cited which held that the companies were merely nominal for diversity jurisdiction purposes.

In *Wolff v. Wolff,* the Fifth Circuit held that a partnership was a nominal party for purposes of diversity in a suit between two partners regarding title to real estate. 768 F.2d 642 (5th Cir. 1985). **[*13]** Richard Wolff, a citizen of New Jersey, and his brother Carl Wolff, a citizen of Texas, had been partners in a company named Citation Investment Company doing business in Texas. *Id.* at 644. Richard filed a diversity action seeking relief in the form of accounting and declaration that he owned a half-interest in certain real estate to which Carl held title. *Id.* This property had been purchased with the intention that it be a partnership asset. *Id.* at 645. Upon judgment, Richard was declared co-owner of the real estate. *Id.* at 644. Two unique facts of this case render it inapplicable to the case at hand. First, the suit did not seek to transfer legal title to the partnership but rather to assert Richard's claim as co-owner. *Id.* at 645. The federal district court found that "the partnership [was] a nominal party joined solely for the purpose of performing any ministerial acts required for the final dissolution and winding up of the partnership." *Id.* Second, the Fifth Circuit acknowledged that it was unclear whether the partnership was even still in existence at the time of the suit; the partnership may have already been dissolved in a prior state action that had been dismissed. *Id.* at 646. **[*14]** The Fifth Circuit observed: "[The] partnership was either already dissolved, as Richard asserts, or was dissolved as a result of the judgement in this suit. In either event, transfer of title [of the real estate] to the partnership would have been a formal and doubtless unnecessary act, requiring

the partnership in dissolution to convey the real estate in turn to the partners." *Id.* The LLC's involvement here is more tangible than in *Wolff*. Plaintiff requests that IIL and TPS be dissolved, that a receiver be appointed, and that this Court render judgment as to alleged mismanagement of those companies. Moreover, IIL and TPS are active companies with existing obligations. As Defendants note, a receiver would take over IIL's operations and contractual obligations. (Reply at 10.)

At the hearing on this matter, the parties disputed the relevancy of a certain insolvency clause, Section 20, of a leasehold mortgage that IIL has entered into with Greenwich Capital Financial Products, Inc. (Sorensen Reply Decl. Ex. 3 at 20.) Defendants argue that were IIL to be dissolved or if this lawsuit is still pending on December 8, 2009, IIL would be in default of a $ 15 million loan. This loan, according **[*15]** to Defendants, demonstrates that IIL has a true interest in this litigation separate from the interests of either Plaintiff or Defendant Sorensen. Plaintiff countered that Section 20 of the agreement pertains only to formal bankruptcy proceedings. Section 20 states, in pertinent part, that:

> If Borrower [IIL] shall voluntarily file a petition under Title 11, United States Code . . . or if Borrower shall fail to obtain a vacation of *involuntary proceedings brought for the reorganization, dissolution or liquidation of Borrower* . . . or if there is an attachment, execution or other judicial seizure of any portion of Borrower's assets and such seizure is not discharged . . . then Lender may, at Lender's option, declare all of the sums secured by this Instrument to be immediately due and payable without prior notice to Borrower . . . .

(*Id.* at 20-21) (emphasis added). As is apparent from the terms of the contract, IIL will be subject to the Lender's option to render the sums payable and to invoke any other remedies permitted by law in the event that IIL is dissolved in this action. The Lender's ability to exercise this option is not limited to bankruptcy proceedings, but would indeed be applicable **[*16]** to this case.

Plaintiff relies on an unpublished decision by the District of Nevada, wherein the court held that a LLC was a nominal party for diversity jurisdiction purposes in a suit between the two sole members of the LLC. *Roskind v. Emigh,* 2007 U.S. Dist. LEXIS 25972, 2007 WL 981725 (D. Nev. April 2, 2007). The company in that case, Radix, dealt with patent applications. The parties sought dissolution of Radix and distribution of title. 2007 U.S. Dist. LEXIS 25972, 2007 WL 981725, at *1. In its holding, the court relied on the Ninth Circuit case *Prudential Real Estate Affiliates v. PPR Realty,* 204 F.3d 867, 873 (9th Cir. 2003), for the proposition that a court "will ignore the citizenship of nominal or formal parties who have no interest in the action and are merely joined to perform the ministerial act of conveying the title if adjudged to the complainant." *Roskind,* 2007 U.S. Dist. LEXIS 25972, 2007 WL 981725, at *2. The District of Nevada stated: "In cases where business entities are joined as parties *solely* for the purposes of dissolution, distribution of assets, or other formal acts, court have traditionally classified these entities as nominal parties for diversity purposes." *Id.* (emphasis added). The evidence before this Court does not indicate that IIL's **[*17]** and TPS' involvement in the suit is purely ministerial.

In an unpublished opinion by the District of Delaware, the court held that, in a dispute between two managers of a limited liability company, Pokobo, the company was a nominal party to the dispute because Pokobo was not a real party to the dissolution controversy. *Polak v. Kobayashi,* 2005 U.S. Dist. LEXIS 17480, 2005 WL 2008306, at *3 (D. Del. Aug. 22, 2005). Petitioner Polak sought dissolution of Pokobo, accounting, and judicial declaration that certain real property title should be transferred to Pokobo. 2005 U.S. Dist. LEXIS 17480, 2005 WL 2008306, at *1. Because Polak had failed to establish that Pokobo had any interest distinct from the interest of Polak and Kobayashi, the company was a nominal party. 2005 U.S. Dist. LEXIS 17480, 2005 WL 2008306, at *3. However, in a subsequent opinion, the District of Delaware found that Polak's claims for breach of fiduciary duty, declaratory judgment, and unjust enrichment were in part derivative claims and thus Pokobo was a real party in interest. [4] *Polak v. Kobayashi,* 2008 U.S.

Dist. LEXIS 92254, 2008 WL 4905519, at *7 (D. Del. Nov. 13, 2008).

**FOOTNOTES**

4 The Court addresses these cases because they are raised by the parties, however, the Court questions its ability to take guidance from these cases, due **[*18]** to their internally contradictory language.

Defendants emphasize that the nominal party exception is limited. (Reply at 5.) In *Fisher v. Dakota Cmty. Bank,* the Southwestern Division of North Dakota summarized this exception for nominal party defendants to apply to "situations in which it is clear that the defendant is not a necessary or an indispensable [sic] as a matter of law, the party has nothing at stake in the litigation, and no real, present claim for relief is being sought against the party." 405 F. Supp. 2d 1089, 1095 (D.N.D. 2005).

The District of Maryland determined that corporations are not nominal parties when conflicting claims of shareholders have a direct effect upon the corporations' property rights. *Birnbaum v. SL & B Optical Centers, Inc.,* 905 F. Supp. 267 (D. Md. 1995). The corporations had a "strong personal interest in the outcome of the case" because resolution of the claims would result in their dissolution and because one of the claims alleged mismanagement of the corporations. *Id.* at 269, 271.

In *Minnis v. S. Pac. Co.,* the Ninth Circuit determined that a corporation was not a nominal party and thus subject matter jurisdiction in a suit by stockholders of the **[*19]** holding company did not exist. 98 F.2d 913 (9th Cir. 1938). Plaintiffs brought suit against various corporations including a ferry operating company in San Francisco Bay. *Id.* at 914. Plaintiffs and the operating company were citizens of California. *Id.* at 915. Holding company stockholder plaintiffs sued to recover money from the holding company and to place a lien on the operating company's property. *Id.* at 914. Plaintiffs requested that a receiver be appointed to take charge of the operating company and to conduct and manage its business, and to distribute the proceeds after wind up of the business. *Id.* at 915. The Ninth Circuit held that the operating company was an indispensable party to the suit and therefore the defect in subject matter jurisdiction was incurable. *Id.*

Plaintiff does not directly dispute the applicability of *Minnis,* except to argue that in *Minnis,* the plaintiffs and operating company were adversaries whereas Plaintiff, IIL, and TPS are not adversaries. The Court is not convinced by Plaintiff's somewhat conclusory statement. IIL and TPS would be dissolved and placed under control of a receiver; IIL and TPS have also both filed this motion to dismiss. Their interests **[*20]** are not clearly united with Plaintiff's interests.

An unpublished 2008 decision from the Eleventh Circuit is instructive here although of course it is not binding precedent. In *Masters v. Harkleroad,* 303 Fed. Appx. 859 (11th Cir. 2008), the Eleventh Circuit evaluated a claim where plaintiffs sought to enjoin LLCs from engaging in further business, appoint a receiver, dissolve the LLCs, and distribute their assets. *Id.* at 861. The Eleventh Circuit noted that it had "found no authority . . . holding that a LLC which a plaintiff seeks to put into receivership, dissolve, and enjoin from engaging in any business activity is merely a nominal party." *Id.* The court held that "the district court lacked subject matter jurisdiction to enter the order appointing a receiver." *Id.*

The same is true for the present case. This Court has found no Ninth Circuit or other authority, and the parties cite none, holding that a LLC which a plaintiff seeks to put into receivership, dissolve, and enjoin management of, is a nominal party.

Plaintiff has not met his burden to prove that diversity jurisdiction exists in this matter. Accordingly, Defendants' motion to dismiss is GRANTED.

II. *Plaintiff's Motion for Leave* **[*21]** *to File Second Amended Complaint*

Plaintiff correctly notes that defective allegations of jurisdiction may be amended upon terms. *See generally* 28 U.S.C. § 1653. However, these amendments are generally allowed to cure technical failures, such as when a party alleges residence instead of citizenship for purposes of diversity jurisdiction. Such an amendment cannot be used to cure an absence of actual diversity. The case at hand is not a situation where actual diversity exists but the complaint inadequately alleged facts to establish jurisdiction. *See Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 831, 109 S. Ct. 2218, 104 L. Ed. 2d 893 (1989); *Snell v. Cleveland,* 316 F.3d 822, 824, 828 (9th Cir. 2002). The defect in diversity jurisdiction is incurable, and a technical amendment to the complaint would be futile. Accordingly, Plaintiff's motion for leave to file a second amended complaint is DENIED AS MOOT.

*CONCLUSION*

For the reasons stated above, the Court (1) GRANTS Defendants' motion to dismiss and (2) DENIES AS MOOT Plaintiff's motion for leave to file second amended complaint.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 10, 2009.

/s/ David Alan Ezra ▾

David Alan Ezra ▾

United States District Judge

Service: **Get by LEXSEE®**
Citation: **2009 U.S. DIST LEXIS 104715**
View: Full
Date/Time: Monday, April 8, 2013 - 11:56 AM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
✦ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis  | Privacy Policy  | Terms & Conditions  | Contact Us
Copyright © 2013 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

In

| Search | Get a Document | Shepard's® | More | | Alerts |
|---|---|---|---|---|---|

FOCUS™ Terms                                     Advanced...   **Get a Document**        View
                                                                                     Tutorial

Service: **Get by LEXSEE®**
Citation: **70 FED APPX 599**

*70 Fed. Appx. 599, \*; 2003 U.S. App. LEXIS 14797, \*\**

JEFFREY STEINER, Plaintiff-Appellant, v. ATOCHEM, S.A., Defendant-Appellee.

No. 02-9080

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

70 Fed. Appx. 599; 2003 U.S. App. LEXIS 14797

July 23, 2003, Decided

**NOTICE: [\*\*1]** RULES OF THE SECOND CIRCUIT COURT OF APPEALS MAY LIMIT CITATION
TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT
OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from the United States District Court for the Southern District of New
York (Keenan, J.).
Steiner v. Atochem, S.A., 2002 U.S. Dist. LEXIS 14848 (S.D.N.Y., Aug. 13, 2002)

**DISPOSITION:** Affirmed.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff resident alien's case against defendant alien was
dismissed with prejudice by stipulation. The resident alien sought to void the judgment under
Fed. R. Civ. P. 60(b)(4) on the ground that the United States District Court for the Southern
District of New York had no subject matter jurisdiction. The district court rejected the
motion. The resident alien appealed.

**OVERVIEW:** The resident alien alleged in his initial complaint that he was a resident of New
York State. This was taken to mean that he was a permanent resident for purposes of
diversity jurisdiction. In 1988, Congress passed an amendment to the diversity jurisdiction
statute, 28 U.S.C.S. § 1332(a). Various courts had indicated that the amendment may have
created federal diversity jurisdiction in suits between a permanent resident alien and an
alien. The instant court could not have said that the exercise of jurisdiction to accept a
stipulation of dismissal was so unreasonable as to constitute an usurpation. It followed that
the stipulation agreed to by the district court was not void. There could have been no doubt
that, before the stipulation was entered, the resident alien had the opportunity to litigate the
jurisdictional issue.

**OUTCOME:** The judgment of the district court was affirmed.

**CORE TERMS:** alien, diversity jurisdiction, resident aliens, usurpation, resident, void, reasonable basis, jurisdictional, domiciled

**LEXISNEXIS® HEADNOTES**      ⊐ **Hide**

Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview 🔦

Civil Procedure > Judgments > Relief From Judgment > Void Judgments 🔦

*HN1* ⤴ A Fed. R. Civ. P. 60(b)(4) motion will not be granted where the district court had a "reasonable basis" for exercising jurisdiction, although the court may have erred in fact as to the existence of that jurisdiction. More Like This Headnote

Civil Procedure > Jurisdiction > Diversity Jurisdiction > Alienage Jurisdiction > Citizenship 🔦

Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview 🔦

*HN2* ⤴ See 28 U.S.C.S. § 1332(a).

Civil Procedure > Jurisdiction > Diversity Jurisdiction > Alienage Jurisdiction > General Overview 🔦

Civil Procedure > Jurisdiction > Jurisdictional Sources > Statutory Sources 🔦

Constitutional Law > The Judiciary > Jurisdiction > Diversity 🔦

*HN3* ⤴ Various courts have indicated that the 1998 amendment to the diversity jurisdiction statute, 28 U.S.C.S. § 1332(a), may have created federal diversity jurisdiction in suits between a permanent resident alien and an alien. More Like This Headnote | *Sheparedize:* Restrict By Headnote

**COUNSEL:** For Plaintiff-Appellant: JOHN M. GRIEM, JR. Milbank, Tweed, Hadley & McCloy LLP, New York, NY (Andrew E. Tomback, Milbank, Tweed, Hadley & McCloy LLP, New York, NY on the brief).

For Defendant-Appellee: JOHN R. OLLER, Willkie Farr & Gallagher, New York, NY.

**JUDGES:** PRESENT: HON. GUIDO CALABRESI, HON. REENA RAGGI, HON. RICHARD C. WESLEY, Circuit Judges.

**OPINION**

**[*599]** SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED.

In February, 1990, this case was dismissed with prejudice by stipulation. The plaintiff-appellant now seeks to void the judgment under Fed. R. Civ. P. 60(b)(4), on the ground that the district court had no subject matter jurisdiction. [1] We have held in *Nemaizer v. Baker* that *HN1* ⤴ a Rule 60(b)(4) motion will not be granted where the district court had a "reasonable basis" for exercising **[**2]** jurisdiction, although the court **[*600]** may have erred in fact as to the existence of that jurisdiction. *See Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986)

(distinguishing a "reasonable basis" for jurisdiction from situations where there is a "total want" or "clear usurpation" of jurisdiction) (citations omitted). Other circuits have made similar distinctions. *See* In re *Factor VIII or IX Concentrate Blood Prods. Litig.*, 159 F.3d 1016, 1019 (7th Cir. 1998); *Honneus v. Donovan*, 691 F.2d 1, 2-3 (1st Cir. 1982).

**FOOTNOTES**

1 Plaintiff also sought to void the judgment under Fed. R. Civ. P. 60(b)(6). The district court denied this claim, and the plaintiff has not appealed that decision.

In this case, the plaintiff alleged in his initial complaint that he was a resident of New York State. This was taken to mean that he was a permanent resident for purposes of diversity jurisdiction. 2 And, assuming that the plaintiff was a permanent resident, it was not a usurpation for a court **[**3]** to have thought it had jurisdiction between these two parties.

**FOOTNOTES**

2 It may well be that this statement could have been challenged at the time as insufficient to plead permanent residency. But the pleading constituted the kind of jurisdictional fact that must be challenged at the moment, not later. *See Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 103 (2d Cir. 1997); *cf. Des Moines Nav. & R.R. Co. v. Iowa Homestead Co.*, 123 U.S. 552, 557, 31 L. Ed. 202, 8 S. Ct. 217 (1887).

In 1988, Congress passed an amendment to the diversity jurisdiction statute that reads: *HN2* ⚓"For the purposes of this section . . . an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." 28 U.S.C. § 1332(a). That statute may very plausibly be read as dealing with other matters, *see, e.g., Saadeh v. Farouki*, 323 U.S. App. D.C. 239, 107 F.3d 52, 55 (D.C. Cir. 1997) (amendment denies diversity **[**4]** jurisdiction over suits between permanent resident aliens and U.S. citizens who are domiciled in the same state), and, hence, as having nothing to do with suits between two aliens. Indeed, an early Supreme Court decision suggests that it would be unconstitutional to create diversity jurisdiction among aliens. *Hodgson v. Bowerbank*, 9 U.S. 303, 3 L. Ed. 108 (1809).

Nevertheless, *HN3* ⚓various courts have indicated that this amendment may have created federal diversity jurisdiction in suits between a permanent resident alien and an alien. *See, e.g., Singh v. Daimler-Benz AG*, 9 F.3d 303, 311-12 (3d. Cir 1993) (also suggesting that *Hodgson v. Bowerbank* might not bar such a grant of jurisdiction); *Nakanishi v. Kanko Bus Lines, Inc.*, 1989 U.S. Dist. LEXIS 7994 at *6 (S.D.N.Y. 1989) (noting that the 1988 amendment might allow a suit between a permanent resident alien and an alien). Moreover, several distinguished commentators have suggested the same possibility. *See, e.g.,* Richard H. Fallon, Daniel J. Meltzer & David L. Shapiro, *Hart and Wechsler's The Federal Courts and the Federal System* 1457-58 (5th ed. 2003); Jack H. Friedenthal, **[**5]** Mary Kay Kane & Arthur R. Miller, *Civil Procedure* § 2.6 (3d ed. 1999). Under the circumstances, we cannot say that the exercise of jurisdiction to accept a stipulation of dismissal-at least at the time that jurisdiction was taken-was so unreasonable as to constitute an "usurpation." 3

**FOOTNOTES**

3 Since 1990, we have implied, *see Franceskin v. Credit Suisse*, 214 F.3d 253, 258 (2d Cir. 2000), and several district courts in this circuit have held, *see, e.g., A.T.X. Export, Ltd. v. Mendler*, 849 F. Supp. 283 (S.D.N.Y. 1994), that the 1988 amendment does not confer such jurisdiction.

It follows that the stipulation agreed to by the district court was not void. Plaintiff's arguments to the contrary notwithstanding, there can be no doubt that, before the stipulation was entered, plaintiff had the opportunity to litigate the jurisdictional issue that he is now raising. Because **[*601]** we find that the district court was correct, under *Nemaizer*, to reject the 60(b)(4) motion, we need not **[**6]** examine the district court's alternative holding concerning the application of 60(b)(4) and whether the original dismissal is properly understood as a 41(a)(1) or 41(a)(2) dismissal.

We have considered all of Mr. Steiner's claims and find them meritless. We therefore AFFIRM the judgment of the district court.

Service: **Get by LEXSEE®**
Citation: **70 FED APPX 599**
View: Full
Date/Time: Monday, April 8, 2013 - 11:57 AM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
(A) - Citing Refs. With Analysis Available
(i) - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

In

About LexisNexis   | Privacy Policy   | Terms & Conditions   | Contact Us
Copyright © 2013 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT C

**APPEARANCE**
JD-CL-12 Rev. 7/10
P.B. §§ 3-1 thru 3-6, 3-8, 10-13, 25A-2

STATE OF CONNECTICUT
**SUPERIOR COURT**
www.jud.ct.gov

*NOTICE TO SELF-REPRESENTED PARTIES (PRO SE)*
*A self-represented party is a person who represents himself or herself. You*
*must let the Clerk's Office know if you change your address by filling out this form.*

**Instructions — See Back/Page 2**

| Docket number |
|---|
| 3:07-00712 (JCH) |
| Return date |

Note: If you are a self-represented party and you filed an appearance before and you are filing this only to let the court know that you have changed your address, check the box below:

☐ *I am filing this appearance only to let the court know that I have changed my address. My new address is below.*

| Scheduled court date (Criminal/Motor Vehicle Matters) |
|---|

**Name of case** *(Plaintiff vs. Defendant)*
Peter G. Cook et al vs. Maya Toidze, Alexandre Ivankine, Tim Toidze and Alexandre Avroutine

| ☒ | ☐ | ☐ | ☐ |
|---|---|---|---|
| Judicial District | Housing Session | Geographic Area | Small Claims |

Address of court (Number, street, town, zip code)
915 Lafayette Boulevard, Bridgeport, CT 06902

**Please Enter the Appearance of**

| Juris number of attorney or firm | Name of self-represented party (See "Notice to Self-Represented Parties" at top), or name of official, firm, professional corporation, or individual attorney. |
|---|---|
| | Maya Toidze |

| Mailing Address (Number, street) (Notice to attorneys and law firms - The address to which papers will be mailed from the court is the one registered or affiliated with your juris number. That address cannot be changed in this form.) | Post office box | Telephone number (Area code first) |
|---|---|---|
| 61 Osborne Family Way | | |

| City/town | State | Zip code | Fax number (Area code first) | E-mail address |
|---|---|---|---|---|
| Newmarket | On | L3X 3B5 | | moriland@rogers.com |

In the case named above for: ("x" one of the following parties: if this is a Family Matters case, indicate the scope of your appearance)

☐ The Plaintiff (includes the person suing another person).
☐ All Plaintiffs.
☒ The following Plaintiff(s) only: Maya Toidze, Alexandre Ivankine, Tim Toidze
☐ The Defendant (includes the person being sued or charged with a crime).
☐ The Defendant for the purpose of the bail hearing only (in criminal and motor vehicle cases only).
☐ All Defendants.
☐ The following Defendant(s) only: _____
☐ Other (Specify): _____
☐ This is a Family Matters case and my appearance is for: ("x" one or both)
　　☐ matters in the Family Division of the Superior Court    ☐ Title IV-D Child Support matters

Note: If other counsel or a self-represented party have already filed an appearance for the party or parties "x'd" above, put an "x" in 1 of these 2 boxes:

☐ This appearance is in place of the appearance of the attorney or firm or self-represented party on file (P.B. Sec. 3-8) OR
☐ This appearance is in addition to an appearance already on file.    (Name and Juris Number)

and, I agree to accept papers (service) electronically in this case under Practice Book Section 10-13    ☒ Yes    ☐ No

| Signed (Individual attorney or self-represented party) | Name of person signing at left (Print or type) | Date signed |
|---|---|---|
| ▶ | Maya Toidze | 7/10/2010 |

**Certification**

| | For Court use only |
|---|---|

*This certification has to be filed out only in eviction cases; for "in place of" appearances; in criminal cases; and in small claims matters.*

I certify that I mailed or delivered a copy of this Appearance form to:

☐ All counsel and self-represented parties of record as listed below and on any additional sheet(s). (For evictions (P.B. Sec. 3-5(a)), criminal actions (P.B. Sec. 3-5(c)) and small claims matters)
☐ Counsel or the party whose appearance is to be replaced as listed below and on additional sheet(s). (For appearances in place of another attorney or firm (P.B. Sec. 3-8))

| Signed (Individual attorney or self-represented party) | Date copies mailed or delivered |
|---|---|
| ▶ | |

| Name of each party copy was mailed or delivered to * | Address which copy was mailed or delivered to |
|---|---|
| | |

* If necessary, attach an additional sheet or sheets with the name of each party and the address which the copy was mailed or delivered to.

**APPEARANCE**

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

PETER G. COOK, THEA DUELL and　　　　　:　　CIVIL ACTION No.
ALEKSANDAR MILOSAVLJEVIC-COOK,　　　:
individually and on behalf of,　　　　　　　　:　　3:07-CV-00712 (JCH)
MAYA'S MEALS, LLC,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　Plaintiffs,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
vs.　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
MAYA TOIDZE, ALEXANDRE IVANKINE,　　:
TIM TOIDZE and ALEXANDRE　　　　　　　:
AVROUTINE,　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　Defendants.　　　　　　　　　　:

## REPLY TO PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT BY CLERK AGAINST DEFENDANTS  By Defendant  Maya Toidze

The Defendants Maya Toidze ("Maya Toidze"), Alexandre Ivankine ("Alexandre

Ivankine") and Tim Toidze ("Tim Toidze"), hereby Reply to Plaintiffs' Motion for Entry

of Default by Clerk (the "Motion") as against the Defendants in the above above-

captioned matter by Peter G. Cook ("Peter Cook"), Thea Duell ("Duell") and Aleksandar

Milosavijevic-Cook ("A. Milosavijevic-Cook"), and allege in support thereof as follows:

Pursuant to Rule 60(b) (3) of Federal Rules of Civil Procedure, the Defendants

Maya Toidze, Alexandre Ivankine and Tim Toidze request that the Court dismiss the

Motion as against them by reason of fraud, misrepresentation, and misconduct by Cook,

Duell, and A. Milosavljevic-Cook, undertaken both individually and in concert and

consisting of false representations known to be false to Cook, Duell, and A.

Milosavljevic-Cook at the time of the making of the Motion and allege in support thereof
as follows:

### Cook had the Defendants Maya Toidze, Alexandre Ivankine, Tim Toidze and other members execute signature pages to a draft Operating Agreement for Maya's Meals in blank.

1.  In or about February 2006, the members of Maya's Meals received a draft of an
    Operating Agreement, including Schedule A "Members, Limited Liability
    Company Percentage and Votes" (with incorrect information about percentage
    interest and voting interests) and Schedule B "Contributions to Capital and
    Assets of LLC" (without any information about members and their capital
    contributions).

2.  Citing the necessity of the urgent acceptance of the Operating Agreement, Cook
    offered to sign the draft and promised to consider the comments given. Trusting
    Cook and his capacity as an attorney, We, just like several other members of the
    company, were sure that he would fix the mistakes and include the information
    that was missing in the draft Operating Agreement. We only saw the purported
    final version of the Operating Agreement in Exhibit A, attached to Plaintiffs'
    original Complaint. But this document does not contain Schedule B.

### The Plaintiffs have, through the wrongful misconduct, attempted to misappropriate for themselves ownership interests in Moriland Foods, Inc and Maya's Meals, LLC.

3.  The omission of Schedule B "Contributions to Capital and Assets of LLC" was
    deliberate.

4.  The omission was attempting to mislead this Honourable Court and to hide the
    information about Cook's loans and of the loans of other Plaintiffs to Moriland
    Foods, Inc, which they plotted  not to convert into identical interests in Maya's
    Meals in the exchange for the assets of Moriland Foods.

5.  On or about March 05 2007, we - Alexandre Ivankine and Tim Toidze, together with all members of Maya's Meals, received an email from M.Toidze, President of Maya's Meals, informing us that "in accordance with the order from the Judge presiding over divorce of Ljiljana and Peter Cook in Massachusetts and lawyer's received demand for transfer of 6.5% of Peter Cook equity in Maya's Meals to Ljiljana Cook, the 6.5% of membership interest (equity) was transferred".

6.  In the Amended Complaint Plaintiffs mislead the Honorable Court by claiming that "the Massachusetts court required no such transfer and that neither Cook nor Interexport, a company owned by Cook and his ex-wife, ever had an ownership interest in 13% of the shares of Moriland Foods, Inc."

7.  It must be noted that this item exists in all previous Plaintiffs' Complaints, starting with original Complaint from April 9, 2007, about which Cook made oath to the truth of the matters contained in it.

8.  However, in the Plaintiffs' Amended Complaint dated August 13, 2010, at paragraph 11 it says that "Mirjana Milosavljevic-Cook Trust was a member of Maya's Meals until August 2, 2010."

9.  It is also noted in the Plaintiffs' Amended Complaint dated August 13, 2010, at paragraph 13 that Ljiljiana Milosavljevic currently owns 4 units of Maya's Meals or 3.83% of the membership interest, which consists of 1,5 transferred from Cook's shares and 2,5 to be from the Mirjana Milosavljevic-Cook Trust.

10. It is important to note that in the Amended Complaint dated September 8, 2010, the information given by us in items 8 и 9 hereof is absent and the following is claimed instead at paragraph 11 "At all relevant times, Mirjana Milosavljevic-Cook Trust ... has been a member of Maya's Meals" and "...currently owns 5 units or 4.79% of the membership interests in Maya's Meal's.

WHEREFORE, Defendants Toidze, Ivankine and Toidze request that the Court dismiss the Motion for entry of default by Clerk against Defendant.

Respectfully submitted.

Maya Toidze
255 Shaftsbury Avenue, Unit, 31
Richmond Hill, On, Canada
Telephone: 647 400 3773
Email:  moriland@rogers.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2010 a correct copy of the
foregoing Reply to Plaintiffs' Motion for Entry of Default by Clerk
against Defendants by Clerk by Defendant Maya Toidze was
furnished by email and registered mail to:

    Richard P. Colbert at rpcolbert@daypitney.com,
    Jonathan M. Shapiro  at jmshapiro@daypitney.com.
    Day Pitney LLP at One Canterbury Green,
    Stamford, CT, USA, 06901-2047 to the attention of Richard P. Colbert and
    Jonathan M. Shapiro,

as well as to:

    Alexandre Avroutine at aliavr@rogers.com

Maya Toidze

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

PETER G. COOK, THEA DUELL and        :      CIVIL ACTION No.
ALEKSANDAR MILOSAVLJEVIC-COOK,   :
individually and on behalf of,          :      3:07-CV-00712 (JCH)
MAYA'S MEALS, LLC,              :
                                  :
          Plaintiffs,            :
                                  :
vs.                               :
                                :
MAYA TOIDZE, ALEXANDRE IVANKINE,   :
TIM TOIDZE and ALEXANDRE        :
AVROUTINE,                   :
                                :
          Defendants.          :      October 8, 2010

**AMENDED REPLY TO PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT BY
CLERK AGAINST DEFENDANTS BY DEFENDANT MAYA TOIDZE,**

The Defendants Maya Toidze ("Maya Toidze"), Alexandre Ivankine ("Alexandre

Ivankine") and Tim Toidze ("Tim Toidze"), represented by Maya Toidze as per Self

representation form filed, hereby Reply to Plaintiffs' Motion for Entry of Default by

Clerk (the "Motion") as against the Defendants in the above above-captioned matter by

Peter G. Cook ("Peter Cook'), Thea Duell ("Duell") and Aleksandar Milosavijevic-Cook

("A. Milosavijevic-Cook"), and allege in support thereof as follows:

Pursuant to Rule 60(b) (3) of Federal Rules of Civil Procedure, the Defendants

Maya Toidze, Alexandre Ivankine and Tim Toidze request that the Court dismiss the

Motion as against them by reason of fraud, misrepresentation, and misconduct by Cook,

Duell, and A. Milosavljevic-Cook, undertaken both individually and in concert and

consisting of false representations known to be false to Cook, Duell, and A. Milosavljevic-Cook at the time of the making of the Motion and allege in support thereof as follows:

**Cook had the Defendants Maya Toidze, Alexandre Ivankine, Tim Toidze and other members execute signature pages to a draft Operating Agreement for Maya's Meals in blank.**

1. In or about February 2006, the members of Maya's Meals received a draft of an Operating Agreement, including Schedule A "Members, Limited Liability Company Percentage and Votes" (with incorrect information about percentage interest and voting interests) and Schedule B "Contributions to Capital and Assets of LLC" (without any information about members and their capital contributions).

2. Citing the necessity of the urgent acceptance of the Operating Agreement, Cook offered to sign the draft and promised to consider the comments given. Trusting Cook and his capacity as an attorney, We, just like several other members of the company, were sure that he would fix the mistakes and include the information that was missing in the draft Operating Agreement. We only saw the purported final version of the Operating Agreement in Exhibit A, attached to Plaintiffs' original Complaint. But this document does not contain Schedule B.

**The Plaintiffs have, through the wrongful misconduct, attempted to misappropriate for themselves ownership interests in Moriland Foods, Inc and Maya's Meals, LLC.**

3. The omission of Schedule B "Contributions to Capital and Assets of LLC" by Peter Cook —Secretary of Maya's Meals was deliberate.

4. The omission was attempting to mislead this Honourable Court and to hide the information about Cook's loans and of the loans of other Plaintiffs to Moriland

Foods, Inc, which they plotted not to convert into identical interests in Maya's Meals in the exchange for the assets of Moriland Foods.

5.  On or about March 05 2007, we - Alexandre Ivankine and Tim Toidze, together with all members of Maya's Meals, received an email from M.Toidze, President of Maya's Meals, informing us that "in accordance with the order from the Judge presiding over divorce of Ljiljana and Peter Cook in Massachusetts and lawyer's received demand for transfer of 6.5% of Peter Cook equity in Maya's Meals to Ljiljana Cook, the 6.5% of membership interest (equity) was transferred".

6.  In the Amended Complaint Plaintiffs mislead the Honorable Court by claiming that "the Massachusetts court required no such transfer and that neither Cook nor Interexport, a company owned by Cook and his ex-wife, ever had an ownership interest in 13% of the shares of Moriland Foods, Inc."

7.  It must be noted that this item exists in all previous Plaintiffs' Complaints, starting with original Complaint from April 9, 2007, about which Cook made oath to the truth of the matters contained in it.

8.  However, in the Plaintiffs' Amended Complaint dated August 13, 2010, at paragraph 11 it says that "Mirjana Milosavijevic-Cook Trust was a member of Maya's Meals until August 2, 2010."

9.  It is also noted in the Plaintiffs' Amended Complaint dated August 13, 2010, at paragraph 13 that Ljiljiana Milosavljevic currently owns 4 units of Maya's Meals or 3.83% of the membership interest, which consists of 1,5 transferred from Cook's shares and 2,5 to be from the Mirjana Milosavljevic-Cook Trust.

10. It is important to note that in the Amended Complaint dated September 8, 2010, the information given by us in items 8 и 9 hereof is absent and the following is claimed instead at paragraph 11 "At all relevant times, Mirjana Milosavljevic-Cook Trust ... has been a member of Maya's Meals" and "...currently owns 5 units or 4.79% of the membership interests in Maya's Meal's.

11. Peter Cook who was the only person in charge for the Maya's Meals corporate papers and documentation as Secretary (Clerk) including filing Maya's Meals'

annual taxes. In 2006 Peter Cook committed acts of fraud by intentionally filing false taxes for Maya's Meals and also for himself and Thea Duell as partners in Maya's Meals in 2006. He did it in order to claim much more shares that he and Thea Duell have right to and to hide the fact that he and Thea Duell did not invest into Maya's Meals the money that he claims they did to have ownership interest in Maya's Meals but sent most of these monies outside USA as loans. They plotted this as described here and in § 1 and 2 .

12.     Peter Cook repeatedly and maliciously tried to make Maya Toidze participate in his misdoings and tax evasions which was rejected by Maya Toidze.


WHEREFORE, Defendants Toidze, Ivankine and Toidze represented by Maya Toidze as per Self representation form filed respectfully request that the Court dismiss the Motion for entry of default  by Clerk against Defendants and make Peter Cook accountable for his wrong doings.


Respectfully submitted,

Maya Toidze
255 Shaftsbury Avenue, Unit,
Richmond Hill, On, Canada
Telephone: 647 400 3773
Email:  moriland@rogers.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2010 a correct copy of the
foregoing Reply to Plaintiffs' Motion for Entry of Default by Clerk
against Defendants by Clerk by Defendant Maya Toidze was
furnished by email and registered mail to:
    Richard P. Colbert at  rpcolbert@daypitney.com,
    Jonathan M. Shapiro  at jmshapiro@daypitney.com,
    Day Pitney LLP at One Canterbury Green,
    Stamford, CT, USA, 06901-2047 to the attention of Richard P. Colbert and
    Jonathan M. Shapiro,
    as well as
    Alexandre Avroutine at aliavr@rogers.com
    Maya Toidze at        mayatoidze@rogers.com
    Alexandre Ivankine at alexivankin@gmail.com
    Tim Toidze        timtoidze@rogrs.com


Maya Toidze

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PETER G. COOK, THEA DUELL and | : | CIVIL ACTION No. |
| ALEKSANDAR MILOSAVLJEVIC-COOK, | : | |
| individually and on behalf of, | : | 3:07-CV-00712 (JCH) |
| MAYA'S MEALS, LLC, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| MAYA TOIDZE, ALEXANDRE IVANKINE, | : | |
| TIM TOIDZE and ALEXANDRE | : | |
| AVROUTINE, | : | |
| | : | |
| Defendants. | : | |

### ORDER

Relief from Certificate of Default made by the Plaintiffs' Peter G. Cook ("Cook"),

Thea Duell ("Duell") and Aleksandar Milosavljevic-Cook ("A. Milosavljevic-Cook"), both

individually and derivatively on behalf of Maya's Meals, LLC ("Maya' s Meals") (collectively,

the "Plaintiffs") is hereby granted in favor of the Defendant Alexandre Avroutine

("Avroutine") pursuant to the Rule 60(b) (3) of the Federal Rules of Civil Procedure, on the

grounds of fraud, misrepresentation, and misconduct by the said Plaintiffs.

Entered this ___ day of October, 2010.

By _____

Clerk of the Court

1